MALOY, RESPONDENT, v. BERKIN, APPELLANT.

[Argued June 22, 1891. Decided August 31, 1891.]

EQUITY — *Cancellation of deed* — *Pleading.* — It is not necessary for a party seeking the cancellation of a deed upon the ground of inadequacy of consideration, and fraud and deceit in its procurement, to show, as a condition precedent to commencing the action, that he has tendered back the consideration received, and an offer in his complaint to restore the same is sufficient.

CONSPIRACY — *Fraud* — *Proof.* — In an action for the cancellation of a deed the complaint alleged a conspiracy between the defendant and one L., whereby L. was to aid the defendant in procuring the deed for an inadequate consideration. There were admissions in the answer to the effect that the defendant had gone to where the plaintiff was on receiving information from L. that he could purchase the property, and upon arriving there had L. bring plaintiff to him as a matter of convenience. It appeared in evidence that L. had invited plaintiff to his house, ostensibly for a visit, and upon entering seemed surprised at seeing defendant there and introduced him to plaintiff; that defendant after learning that plaintiff and L. had formed a prospecting partnership, desired to enter into it; that L., after speaking privately with plaintiff, mentioned the mine and the interest he had bought from plaintiff; that defendant then offered to buy the interest from L. and also plaintiff's remaining interest for one thousand dollars each, which was accepted by L. after plaintiff had said that whatever L. did was satisfactory. *Held*, that such facts tended to prove the co-operation of L. with defendant, and laid an ample foundation for the introduction of evidence relating to the conduct of L. prior to the time of executing the deed to defendant whereby he procured from plaintiff, while intoxicated, a deed to a one-fourth interest in the mine. *Held, also*, that such facts, coupled with evidence that defendant had told L., prior to obtaining plaintiff's interest, to buy such interest for him for four or five hundred dollars if he could, were sufficient to support a finding that the defendant and L. conspired to obtain plaintiff's interest far below its value, the jury having found that the mine was worth forty thousand dollars.

EVIDENCE — *Market value.* — A finding that a mine is worth forty thousand dollars is supported by proof that the mine was developed to such an extent as to have produced valuable paying ores, and that a one-eighth interest had been recently sold for five thousand three hundred dollars and a one-fourth interest for ten thousand dollars, and that contracts had been made for the purchase of other interests at proportionate sums. (*Montana Ry. Co.* v. *Warren*, 6 Mont. 275, cited.)

EQUITY — *Cancellation of deed* — *Fraud* — *Inadequacy of consideration* — *Evidence.* — In the case at bar it appeared from the evidence that defendant had heard it rumored that one S. had sold his eighth interest in the mine for four or five thousand dollars, and that he had borrowed from S. the money to buy plaintiff's interest; that plaintiff had not seen or received any information concerning the mine for eighteen months, during which time it had developed to be worth forty thousand dollars. Defendant testified that he was led to make an effort to find plaintiff because he was excited about the property like a good many others; that many were looking for plaintiff, and that one man had told him he would give him three hundred dollars to find plaintiff; that the value of the mine was in everybody's mouth; that it was reported that plaintiff was lost. *Held*, sufficient evidence that defendant's purchase at this time of a one-fourth interest for one tenth of its market value was made with knowledge of its true value, and that defendant had reason to believe that plaintiff was ignorant of the present value of his interest.

SAME — *Same.* — The cancellation of a deed will not be decreed in equity upon the ground of inadequacy of consideration alone, but where such element of the case is accompanied with circumstances amounting to fraud or deceit the relief will be granted.

*Appeal from Fifth Judicial District, Jefferson County.*

Action for cancellation of a deed. The cause was tried before GALBRAITH, J. Plaintiff had judgment below.

*Cowan & Parker* (*W. F. Sanders*, of counsel), for Appellant.

I.    A party seeking to rescind a contract on the ground of fraud must, as a condition precedent to his right to commence or maintain his action therefor, make, or offer to make, full restitution to the other party.    Respondent brought his action without notice to appellant of his desire to rescind, and without restoring the money he had received as consideration for the deed, and without offering to restore the same.    (*Johnson* v. *Evans*, 8 Gill, 155; 50 Am. Dec. 672, 674; *Hoadley* v. *House*, 32 Vt. 179; 76 Am. Dec. 167; *Herman* v. *Haffenegger*, 54 Cal. 161; *Gifford* v. *Carvill*, 29 Cal. 589; *Oakland* v. *Carpentier*, 21 Cal. 642; *Morrison* v. *Lods*, 39 Cal. 381; *Fitz* v. *Bynum*, 55 Cal. 459; *Upper San Joaquin etc. Canal Co.* v. *Roach*, 78 Cal. 552.)    There are cases wherein the thing to be restored possesses no value to either of the parties, or where, by some wrong action of the opposite party, restitution could not be made, before suit brought, in which the equities would not require restitution, as a condition precedent to the suit; but this case is not such a one, for in case at bar, the plaintiff had received from defendant Berkin, as consideration for his deed, the sum of one thousand and twenty dollars, had deposited the same in bank, and continued, for months after his suit was instituted, to draw from the bank and use the said moneys, thereby voluntarily depriving himself of the ability to make restitution.

II.    The testimony of plaintiff as to what was done and said between himself and one George La Point, the same not occurring in the presence or hearing of defendant, and prior to any transactions or acquaintance between them, was incompetent; and where irrelevant or incompetent testimony is admitted a new trial should be granted without inquiring how far such testimony may have influenced the verdict.    (*Myers* v. *Malcolm*, 6 Hill, 292; 41 Am. Dec. 744.)    Such testimony not being part of the *res gestæ*, and not growing out of the principal transaction, or contemporaneous with it, is wholly inadmissible. (*Leahey* v. *Cass Ave. etc. Ry. Co.* 10 Am. St. Rep. 300, and note.)

III.    Value of a mining claim must be proven by the same rule by which the value of other property is shown or estab-

lished. (*Montana Ry. Co.* v. *Warren,* 6 Mont. 275.) It is wholly immaterial what the value of the property was, as the proof fails to connect the defendant with a knowledge of its value, and the jury found that defendant did not know the value of the property at the time of the purchase, so that gross inadequacy of consideration cannot be entertained as an elemental ground for setting aside the deed in controversy.

IV. There being no relations of trust or confidence between the contracting parties, the question of gross inadequacy of price being eliminated from the case, and the findings of the jury, supported by the proof, showing that defendant made no false representations or misstatements to the plaintiff with regard to the property, destroys the whole ground-work of the plaintiff's action. Inadequacy of consideration, without fraud, or relations of trust or confidence between the contracting parties, is no ground for rescission. (*Perkins* v. *Center,* 35 Cal. 725; 2 Pomeroy's Equity Jurisprudence, p. 428, §§ 926–928; *Harris* v. *Tyson,* 24 Pa. St. 347; 64 Am. Dec. 661.)

*Thomas Joyes,* and *B. P. Carpenter,* for Respondent.

I. It is sufficient for a defrauded party bringing an action in equity to rescind a contract, or set aside a conveyance, "to offer in his complaint to restore to the defendant what he has received, and the rights of the parties can be fully regulated and protected in the judgment to be entered." (*Gould* v. *Cayuga Co. Nat. Bank,* 86 N. Y. 83; 99 N. Y. 337; *Allerton* v. *Allerton,* 50 N. Y. 670; *Vail* v. *Reynolds,* 118 N. Y. 302; *Shuee* v. *Shuee,* 100 Ind. 481; *Hopkins* v. *Snedaker,* 71 Ill. 451; *Whelan* v. *Reilly,* 61 Mo. 565; *Miller* v. *Cotten,* 5 Ga. 341–356; Bispham's Principles of Equity, § 43; 1 Story's Equity Jurisprudence, § 64 *e.*) (*a*) The text-writers and well-considered cases to an almost unlimited number are authority for the foregoing rule. (*b*) The rule is not shaken by the cases cited by appellant as to restoration, which are as follows: *Johnson* v. *Evans,* 8 Gill, 155; 50 Am. Dec. 672, and *Hoadley* v. *House,* 32 Vt. 176; 76 Am. Dec. 167, are actions at law. *Herman* v. *Haffenegger,* 54 Cal. 161, is an action in equity, but the opinion is not well considered, and follows the rule laid

down in *Gifford* v. *Carvill*, 29 Cal. 589, which is an action at law. (The court may have had in its mind section 1691 of the Civil Code of California, which applies to actions at law, and not section 3408 of same Code, which applies to suits in equity.) In *Oakland* v. *Carpentier*, 21 Cal. 642, the question did not arise as to when the offer to do equity should be made. *Morrison* v. *Lods*, 39 Cal. 381, holds that there can be no relief to the defrauded party without a tender or restoration. It was an action for specific performance, and not in point. *Fitz* v. *Bynum*, 55 Cal. 459, and *Upper San Joaquin etc. Canal Co.* v. *Roach*, 78 Cal. 552, were actions at law. (*c*) It is immaterial what plaintiff did with the one thousand and twenty dollars received from defendant, if he had that amount ready to apply under the direction of the court. (*d*) Plaintiff brought his action to rescind an executed contract immediately on discovery of the fraud. There was no ratification of the contract, or condonation of the fraud, by reason of his not immediately returning the money.

II. "The testimony of plaintiff as to what was done and said between himself and La Point on the twentieth day of March, 1890," was competent and admissible. (*a*) The witness La Point was a co-conspirator with defendant. (*b*) "The declarations of one co-conspirator in furtherance of the common design, as long as the conspiracy continues, are admissible against his associate, though made in the absence of the latter." (2 Wharton on Evidence, § 1205; *Lincoln* v. *Claflin*, 7 Wall. 138, 139; *Nudd* v. *Burrows*, 91 U. S. 438; Comp. Stats. Mont. p. 227.) (*c*) The least degree of concert or collusion is sufficient to render admissible the declaration or act of a co-conspirator. (*Rogers* v. *Hall*, 4 Watts, 361; *Gibbs* v. *Neely*, 7 Watts, 307; *Confer* v. *McNeal*, 74 Pa. St. 115; *Deakers* v. *Temple*, 41 Pa. St. 234; *Kelsey* v. *Murphy*, 26 Pa. St. 78; *Chicago etc. R. R. Co.* v. *Collins*, 56 Ill. 212.) (*d*) The acts and declarations of La Point were part of the *res gestæ*. The *res gestæ* are not necessarily confined to a minute or an hour, but may extend over weeks or months. (*Apthorp* v. *Comstock*, 2 Paige, 488; *United States* v. *Gooding*, 12 Wheat. 470; *Lee* v. *Lamprey*, 43 N. H. 13.) (*e*) In equity the rule is well settled that the admission of improper testimony, or the rejection of proper testimony, is no ground for a new trial, if the court

upon consideration of all the testimony is satisfied that justice has been done. (*Apthorp* v. *Comstock*, 2 Paige, 482; *Head* v. *Head*, 1 Sim. & St. 150; S. C. on appeal, Turn. & R. 142; *Barker* v. *Ray*, 2 Russ. 63, and note; *Forrest* v. *Forrest*, 25 N. Y. 510; 8 Bosw. 654; *Mulock* v. *Mulock*, 1 Edw. Ch. 14; *Snell* v. *Loucks*, 12 Barb. 389; *Sawyer* v. *Campbell*, 130 Ill. 186; *King* v. *Whaley*, 59 Barb. 71; *Matter of New York etc. R. R. Co.* 90 N. Y. 347.)

III. The testimony of the witnesses who expressed their opinion as to the value of the mine was competent. (*Montana Ry. Co.* v. *Warren*, 6 Mont. 281; S. C. 137 U. S. 348.)

IV. There was gross inadequacy of consideration coupled with deception, falsehood, and artifice by defendant. It appeared that the mine had notoriety at defendant's home; that he knew that a one-eighth interest had just been sold for five thousand three hundred dollars. But if he deceived and defrauded plaintiff, it is immaterial whether he knew the value of the mine or not.

V. The cancellation of a deed obtained for an inadequate consideration will be decreed where the purchaser has practiced or been guilty of any fraud, imposition, concealment, trick, artifice, or unfairness, or has taken an undue advantage of the ignorance, weakness, or necessity of the vendor; and where there is a gross inadequacy of consideration any slight circumstance indicating unfairness on the part of the purchaser will vitiate the deed. (2 Pomeroy's Equity Jurisprudence, §§ 901, and note, 927, and note, 928, 949; 1 Story's Equity Jurisprudence, § 246; 1 Brown Ch. marginal p. 6; Kerr on Fraud and Mistake, pp. 98, 187; 3 Wait's Actions and Defenses, p. 432; 5 Wait's Actions and Defenses, p. 517; *Marlatt* v. *Warwick*, 18 N. J. Eq. 108; *Butler* v. *Haskell*, 4 Desaus. Eq. 651; *Morriso* v. *Philliber*, 30 Mo. 145; *Price* v. *Martin*, 46 Miss. 489; *Twistleton* v. *Griffith*, 1 P. Wms. 310; *Clarkson* v. *Hummay*, 2 P. Wms. 203; *Osgood* v. *Franklin*, 2 Johns. Ch. 1; 7 Am. Dec. 513; *Whelan* v. *Whelan*, 3 Cowen, 571; *Tate* v. *Williamson*, 2 Ch. App. Cas. 55; *Smith* v. *Bentley*, 2 Ired. Eq. 456; *Matthews* v. *Bliss*, 22 Pick. 48.) "Fraud has been defined to be any *kind of artifice by which another is deceived.* Hence, all surprise, trick, cunning, dissembling, and other unfair way that

is used to cheat any one is to be considered a fraud." (Willard's Equity Jurisprudence, p. 147.)

VI. The defendant placed himself in a fiduciary relation to plaintiff by pretended partnership arrangement, believed by plaintiff to be *bona fide*. This made it the duty of defendant to communicate to plaintiff any knowledge or information that he had concerning the mine. (1 Story's Equity Jurisprudence, § 218; 2 Pomeroy's Equity Jurisprudence, §§ 902, 903, 951, 955, 956, 963; 3 Wait's Actions and Defenses, pp. 444, 466.)

HARWOOD, J. — This case stands for review, upon appeal from the judgment and an order overruling appellant's motion for a new trial. The object of the action was to obtain a decree of cancellation of a deed of conveyance of an undivided one-fourth interest in a certain quartz lode mining claim, situate in Jefferson County, known as the "Ida Mine," for alleged gross inadequacy of consideration paid for said property, and acts of fraud and deceit in the procurement thereof. It appears that the deed of conveyance in question was made and delivered March 22, 1890, in consideration of one thousand and twenty dollars paid to the grantor, and on the twenty-fifth day of that month he commenced this action for cancellation of said deed. In the complaint an offer is made to restore to defendant the sum of money paid plaintiff as such consideration, with interest thereon, or to pay the same into court for the use of defendant, or to make such disposition thereof as the court may direct; but it is not shown by the complaint that plaintiff had, prior to the commencement of the action, tendered or offered to return to defendant said sum of money. Defendant's counsel moved the court for judgment on the pleading, on the ground that an action for cancellation of a contract cannot be lawfully commenced and maintained unless it is shown by plaintiff that he has first tendered back to defendant that which was received as consideration for the execution of the contract, and that the same does not appear in this case. The motion was overruled, and the action of the court in that respect is the first alleged error assigned by appellant.

We do not perceive why, in reason, the doctrine contended for should apply in cases of this nature. The very object and

purpose of the action is to compel an undoing of what has been done; to compel a mutual restoration of each party to the position he occupied before the fraudulent transaction was consummated. Neither the relief nor the right to relief is predicated upon the tender back of what was paid in procuring the contract. In this case the relief, if granted, proceeds upon the ground that some circumstances or conditions exist in relation to the parties which in law amounts to constructive fraud, or that actual fraud has been practiced in procuring the execution of the conveyance or contract. (Willard's Equity Jurisprudence, 302; 1 Story's Equity Jurisprudence, § 694, et seq.; 2 Pomeroy's Equity Jurisprudence, §§ 922–928.) As a matter of course, in granting such relief the court requires equity at the hands of the complaining party, as well as from the party guilty of fraud; that is, the restoration of everything of value received in the transaction. The precise point has been under consideration in numerous well-considered cases of this nature, and it has been held that a court of equity will proceed with the action for cancellation without requiring, as a condition precedent to commencing the action, that the complaining party shall have tendered back what he had received; that an offer in his complaint to restore the same is sufficient; and, if a case is made out which moves the court to grant relief, it carries into effect the maxim that he who seeks equity shall do equity. (1 Story's Equity Jurisprudence, § 693; *Gould* v. *Cayuga Co. Nat. Bank,* 86 N. Y. 75; 99 N. Y. 337; *Allerton* v. *Allerton,* 50 N. Y. 670; *Vail* v. *Reynolds,* 118 N. Y. 302; *Shuee* v. *Shuee,* 100 Ind. 477; *Hopkins* v. *Snedaker,* 71 Ill. 449; *Whelan* v. *Reilly,* 61 Mo. 565; *Thomas* v. *Beals,* 154 Mass. 51.)

We think the rule is sustained by the greater weight of authority as applicable in cases like the one at bar. If such were not the rule, fraud might, in its manifold resources, frequently contrive to so shape the conditions and circumstances that the defrauded party could not make an offer to restore, prior to invoking the power of the court for relief; and relief would then be denied by reason of the rule. However, the rule seems not to be applied to all cases where rescission is sought, as will be seen by consulting the cases cited *supra.* Where a party defrauded is so situated in respect to the subject-matter that he

can return to the guilty party that which the latter parted with
in the transaction, and nothing more is necessary to effect a re-
scission, in such case the rule seems to be, that the complaining
party must first restore, or offer to restore, what he received,
before he can maintain his suit or defense; as, where a party
has been induced through fraudulent representations to buy
chattels, he may rescind the contract by a return or a tender
back of such chattels, and resist payment therefor on the
ground of fraud in the inducement to purchase, or recover
back money or other valuable things given in payment; but
it must appear that within a reasonable time after discovery of
the fraud restoration or offer thereof was made.    The case of
*Gifford* v. *Carvill*, 29 Cal. 589, and the cases therein cited, are
illustrations of that class of cases.    It will be observed, how-
ever, in the illustrations brought to view, that the action or
defense through which relief is sought is an action at law, or a
defense to such an action.    In the one case the action is to re-
cover back money paid out in the transaction induced by fraud,
or, on the other hand, a defense against an action brought to
enforce the contract, which was procured through fraudulent
representations.    Occasionally a case will be found where the
true distinction seems to have been lost sight of, and the rule
requiring a return or offer to return, as a condition precedent to
maintaining the action, is applied to an action in equity for
cancellation, rescission, or annulment.    This seems to have been
done in the case of *Herman* v. *Haffenegger*, 54 Cal. 161, cited
by appellant.    That was an equity case for the rescission of a
contract on the ground of fraud in procuring it, and for re-
covery of property claimed to have been parted with by the
complaining party through fraudulent representations.    The
court denied relief on the ground that it did not appear that
the plaintiff had, prior to commencing his action, returned or
offered to return what he had received in the transaction.    The
only authority cited was *Gifford* v. *Carvill*, *supra*, which was
not an equity action for rescission or cancellation, but was an
action at law in all its attributes.    The latter case was brought
to enforce payment of certain promissory notes, and the defense
set up was fraudulent representations made and relied upon
in the sale of mining stock, for which the notes were given.

Fraud, as a defense in such a case, does not belong exclusively to equity jurisdiction. We find no error in the action of the court in overruling defendant's motion for judgment on the pleadings.

This cause was tried by the court, sitting with a jury impaneled to aid in finding the facts. All other specifications of error urged by counsel for appellant relate to the admission of evidence and finding of facts. It was alleged in the complaint that one George La Point, by prearrangement, conspired with defendant to aid him in procuring a conveyance of said property from plaintiff for a grossly inadequate consideration; and that in furtherance of such design said La Point did a series of wrongful acts, and made certain false representations, specifically set out and alleged, calculated to aid, and which did aid defendant in procuring a conveyance of said property. During the trial the court permitted plaintiff to introduce testimony tending to prove that, two days prior to making the conveyance to defendant, said La Point sought out and introduced himself to plaintiff, and inquired about his present circumstances, means of support, and intentions; and finding that he was without money, and looking for employment, told plaintiff that he (the said La Point) would furnish plaintiff money for his present expenses; told plaintiff he ought not to seek employment; that La Point had been told plaintiff was the best prospector that could be found, and proposed that plaintiff should enter into a partnership arrangement with La Point to go prospecting for mines; and that they agreed upon such partnership arrangement; and that said La Point induced plaintiff to go about the town of Anaconda with La Point to look for, and arrange to purchase, certain supplies to use in such prospecting business; that during this time, and from the first meeting of said parties, plaintiff was encouraged by said La Point to drink extensively of intoxicating liquors furnished by the latter; that plaintiff became intoxicated, and while in that state said La Point procured a deed from plaintiff conveying to La Point a one-fourth interest in said Ida Mine, in consideration of one hundred and four dollars in money, and two promissory notes made by said La Point for two hundred dollars each, payable to plaintiff.

The introduction of all such evidence relating to the conduct of said La Point prior to the time of executing the deed of conveyance to defendant was objected to, and exception reserved to the admission thereof, on the ground that the same was irrelevant and incompetent because defendant Berkin was in no way connected with said acts of La Point, and that said acts were not in any way connected with the transaction whereby defendant Berkin obtained the deed sought to be canceled by this action. The same objection was also urged in a motion to strike out said testimony, made at the time the plaintiff rested in the proof of his case; which motion was overruled, and defendant excepted thereto. This testimony related to alleged acts done in the absence of defendant by one alleged to be a conspirator co-operating with him to accomplish the purpose in question. Such testimony was permissible only on the ground that such prearrangement, conspiracy, or relation of principal and agent between said La Point and defendant had been shown.

What evidence was there before the court tending to prove the existence of such agency, prearrangement, or conspiracy? The answer of the defendant in the action admits that "the defendant went to Anaconda for the purpose of purchasing said interest, and took with him for that purpose the draft referred to, upon information sent him by La Point;" and again admits "that defendant, being a stranger, had La Point find plaintiff, and bring him to defendant, as a matter of convenience to him;" and, again, defendant's answer "avers that this defendant went to Anaconda upon information received by him from La Point that he could purchase said property." It is true these admissions are innocent enough in themselves, but they do show some co-operation by said La Point with defendant in reference to the object sought to be consummated.

In addition to those admissions in defendant's answer, prior to the admission of the evidence under consideration, testimony had been introduced to the effect that on said 22d of March, said La Point sought and found plaintiff in a saloon at Anaconda, where he had been engaged at card-playing and drinking intoxicating liquors; that plaintiff was invited by said La Point to go to his house in Anaconda, and La Point accompanied plaintiff there; that plaintiff understood from La Point's invi-

tation that the object of this visit to La Point's house was to see his folks; that when the two entered said house, defendant Berkin was there, and La Point seemed surprised to see defendant, and inquired where he came from, and defendant replied that he had come from Ore Fino mining district, where he had been prospecting (which mining district is situated at a distance from the section where the Ida Mine is located); that La Point then introduced plaintiff to defendant Berkin; that La Point then explained to defendant that plaintiff and La Point had entered into an arrangement to go prospecting, and thereupon defendant expressed a desire to enter into such arrangement with them; that defendant and said La Point then went into another room, and held some conversation together; that defendant returned shortly afterwards to the room where plaintiff was, and again said he would like to get into the prospecting business mentioned; that La Point then mentioned the subject of the Ida Mine, saying he had a fourth interest therein, and thereupon defendant proposed to La Point to buy the interest which he owned in said mine, and also the fourth interest owned by plaintiff, offering one thousand dollars each for said interests; that La Point called plaintiff's attention to said offer, and asked what he thought of it, and that plaintiff replied, saying, "We are partners, and whatever you do is satisfactory to me;" that La Point thereupon accepted the offer, and defendant immediately paid to La Point and to plaintiff the sum of twenty dollars each to bind the bargain. The court, having before it evidence of that character, allowed inquiry to be made as to the representations and conduct of La Point in relation to the formation of said partnership arrangement for prospecting, and the acquisition by La Point of said fourth interest in the Ida Mine, which occurred two days before the transaction of defendant in question. In view of such testimony before the court, tending to prove the co-operation of La Point with defendant in his effort to procure the deed in question, we cannot hold that the court erred in allowing the introduction of said testimony objected to and urged as error. We think an ample foundation was laid to sustain the introduction thereof. (Code Civ. Proc. § 642; Wharton on Evidence, § 1205; *Lincoln* v. *Claflin,* 7 Wall. 132; *Nudd* v. *Burrows,* 91 U. S. 438.)

Among other matters assigned as ground for a new trial is a specification that the finding of the jury to the effect that defendant and said La Point conspired together to obtain plaintiff's interest in said mine "for a consideration far below its value" is not supported by the evidence. In addition to admissions in the answer of defendant and the evidence above referred to, it was disclosed by the testimony of both La Point and defendant Berkin that, about a week before the interest was obtained for defendant, he went to Anaconda in search of plaintiff, and not being able to find him, as defendant testified, he "told La Point to look for Maloy, and let defendant know at once if he could find him, and that if he could buy in, or buy his interest in the Ida Mine for four or five hundred dollars, to do so; he was to buy the interest for me;" and that La Point "said he would do it." And, notwithstanding the fact that La Point first procured a conveyance of one-fourth interest in said mine to himself, it does not appear that he at all relinquished his effort to aid his brother-in-law, Berkin, in obtaining a deed from plaintiff for the remaining fourth interest in said mine; and that it was obtained for a consideration grossly out of proportion to its value does not admit of doubt, if the value of said mine was forty thousand dollars, as found by the jury and court.

This brings us to the point raised by the counsel for appellant, that the court erred in admitting certain testimony as to the value of said mine, and that the finding that the value of said mine was forty thousand dollars is unsupported by evidence. Appellant's counsel have not explained wherein the evidence introduced as to value does not conform to the views expressed in *Montana Ry. Co.* v. *Warren,* 6 Mont. 275, and in the opinion of the Supreme Court of the United States affirming the same case, 137 U. S. 348. Neither is it explained wherein the witnesses were not shown to be fully competent to testify as to the value of said mine. In this case the mine was developed to such an extent as to have produced valuable ores, from which valuable returns had been derived. Not only so, the property appears, at the time, to have had a market value. About the time in question a one-eighth interest in said mine had been sold for five thousand three hundred dollars, and a one-fourth interest

for ten thousand dollars; and other interests were sought for, and contracts made to pay proportionate sums therefor. So much was shown concerning the market value of the property; and the witnesses who testified to the value were first shown to be fully qualified to speak upon that subject, according to the views expressed in the case last above cited.

In the brief of counsel for appellant it is urged that the court erred in allowing witness McIntire to testify on behalf of plaintiff that defendant's father, William Berkin, worked a few days in said mine prior to the transaction in question. This point was not specified to the court below as error, on the motion for new trial, as appears by the record, and the same is therefore passed without consideration.

In this case it appears that defendant obtained the interest in question by paying about one tenth of its market value. From the evidence set forth in the record, there is scarcely room for a reasonable doubt, that when defendant undertook to find plaintiff, and obtain a deed for said property, defendant had knowledge of the value of the property which he sought to obtain for so small a consideration, and also had reason to believe that plaintiff was ignorant of the present value of the same. Defendant's testimony convinces us of that, notwithstanding his great effort to conceal the fact that he had such knowledge. He admits that he heard it rumored that Al. Sheed had sold his eighth interest in said mine for four or five thousand dollars. This was the person from whom defendant borrowed the money with which to purchase plaintiff's interest. Defendant says in his testimony that the fact which led him to make an effort to find plaintiff was that he (defendant), "like a good many others, was excited about this property." "That is," he says, "my curiosity was excited. A good many were hunting for him, and I thought I had the same right, and that I would do the same. I thought there might be something in it, by reason of the inquiries that were being made about him. There were a good many around here hunting for him, and one man told me he would give me three hundred dollars if I could find him." Defendant further testifies that the subject of this mine "was in everybody's mouth;" that it had been reported to him that the plaintiff was lost; that plaintiff had been adver-

tised for in the local newspapers. It appears without dispute
that plaintiff had neither seen nor received any information con-
cerning said mine for about eighteen months, and in the mean
time the mine had been developed from an unpromising "pros-
pect" to a paying mine, and had a present value in the market,
as above set forth; that plaintiff was supposed to have been lost;
and that defendant had been consulted about administering on
plaintiff's estate.

However, as counsel for appellant correctly argue, inadequacy
of consideration alone is not sufficient cause for cancellation of
a conveyance, except, perhaps, in extreme cases. Inadequacy
of consideration is one strong element of the cause, and, if ac-
companied by circumstances which amount to fraud, the cause
for relief is made out. Mr. Pomeroy, in his work on Equity
Jurisprudence, states forcibly and succinctly the principles appli-
cable to this subject, and accompanies his text with a multitude
of authorities, bringing his research down to a recent date.
We quote some of his observations. He says: "The rule is
well settled that where the parties were both in a situation to
form an independent judgment concerning the transaction, and
acted knowingly and intentionally, mere inadequacy in the price
or in the subject-matter, unaccompanied by other inequitable
incidents, is never of itself sufficient ground for canceling an
executed or executory contract. If the parties, being in the
situation and having the ability to do so, have exercised their
own independent judgment as to the value of the subject-matter,
courts of equity should not, and will not, interfere with such
valuation. In some of the earlier decisions, mere inadequacy,
either in the price or the value of the subject-matter, was held
to be a sufficient hardship, which might defeat the specific per-
formance of an executory contract when set up as a defense.
The doctrine, however, is now settled that mere inadequacy —
that is, inequality in value between the subject-matter and the
price — is not a ground for refusing the remedy of specific per-
formance. In order to be a defense, the inadequacy must either
be accompanied by other inequitable incidents, or must be so
gross as to show fraud. In short, inadequacy as a negative
defense, and as an affirmative ground for a cancellation, is gov-
erned by one and the same rule. Although the actual cases in

which a contract or conveyance has been canceled on account of gross inadequacy merely, without other inequitable incidents, are very few, yet the doctrine is settled by a *consensus* of decisions and *dicta* that even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract, whether executed or executory. Even then, fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief. If there is nothing but mere inadequacy of price, the case must be extreme to call for the interposition of equity. Where the inadequacy does not thus stand alone, but is accompanied by other inequitable incidents, the relief is much more readily granted. But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, which should be carefully observed. The fact that a conveyance or other transaction was made without professional advise or consultation with friends, and was improvident, even coupled with an inadequacy of price, is not of itself a sufficient ground for relief, provided the parties were both able to judge and act independently, and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstances of oppression. When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentation, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative. It would not be correct to say that such facts constitute an absolute and necessary ground for equitable interposition. They operate to throw the heavy burden of proof upon the party seeking to enforce the transaction, or claiming the benefits of it, to show that the other acted voluntarily, knowingly, intentionally, and deliberately, with full knowledge of the nature and effect of his acts, and that his consent was not obtained by any oppression, undue influence, or undue advantage taken of

his condition, situation, or necessities. If the party upon whom the burden rested should succeed in thus showing the perfect good faith of the transaction, it would be sustained; if he should fail, equity would grant such relief, affirmative or defensive, as might be appropriate." (2 Pomeroy's Equity Jurisprudence, §§ 926–928.)

The conclusion which we have reached, after mature consideration of the case, and the points, authorities, and arguments of counsel, is that none of the errors assigned ought to be sustained, and that the findings and decree are fully supported by the evidence. We are satisfied from the evidence that, when defendant set out in his endeavor to obtain said property, he knew full well the value thereof; yet if, with such knowledge, he had sought and obtained a transfer of the property for such small consideration compared to its value, and, to do so, hurried to take advantage of plaintiff's ignorance of the late development of said property and the greatly increased value thereof, still the transaction might not have been set aside had defendant taken care to keep himself free from the use of means and agencies which tended to place the victim of his covetous design at a still greater disadvantage. Having a knowledge of the value of said property, it clearly appears that defendant contemplated and undertook the procurement thereof for a grossly inadequate consideration. Yet with only those facts in view, in a case like this, where no infirmity or weakness of plaintiff is shown, the law is slow to move, and often remains dormant when appealed to for the undoing of the transaction, "provided the parties were both able to judge and act independently, and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstances of oppression." (Pomeroy, *supra.*) But, when gross inadequacy of consideration is shown, the law requires of the defendant the strict avoidance of all false, deceitful, or unfair means calculated to advantage his design; and therein the defendant's conduct does not stand the test. When we speak of defendant's conduct, we have in view not only what he personally did, but also what he did through the agency of La Point, whom defendant commissioned to "buy in, or buy the interest" of Maloy in, said property for defendant, and who aided defend-

ant in his transaction. The facts shown to the satisfaction of the court as to the conspiracy, or relation of principal and agent, between defendant and La Point in the consummation of the transaction; as to the intoxication of plaintiff, from the influence of which the court found he was not free, when the conveyance was made to defendant; as to the use made of the partnership scheme to gain the trust and confidence of plaintiff, and distract his attention from the real object to be achieved; and as to the said La Point pretending to sell his fourth interest in said mine, for the same price, and at the same time, — each and all of those facts were potent elements in this case to taint with fraud and vitiate the transaction, when looked at in connection with the fact that defendant commenced his efforts to obtain said property, with the intention to, and did acquire it for a grossly inadequate consideration.

It is therefore ordered that the judgment and the order overruling appellant's motion for a new trial be affirmed, with costs.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.