WAITE. RESPONDENT, *v.* VINSON ET AL., APPELLANTS.

[Submitted January 3, 1894.   Decided May 14, 1894.]

PARTNERSHIP—*Constructive fraud—Sale of partnership property by one partner without consent of the other.*—A sale by one partner of a large portion of the firm property for the purpose of paying firm obligations, the proceeds of the sale being devoted to that purpose, though made without the concurrence of the other partner, but with his knowledge that a sale was contemplated, cannot be avoided as a constructive fraud at the suit of the nonconcurring partner, upon the mere showing that the vendee knew of the latter's interest in the property and want of consent, where the price paid was the full market value and the sale was highly beneficial to the interests of the firm.

EQUITY—*Fraudulent sale—Rescission—Tender of price.*—Where one partner seeks relief in equity from an alleged fraudulent sale of partnership property made by the other partner without his consent, where a fair price was obtained and the proceeds devoted to the liquidation of the firm obligations, he must first do equity by tendering to the vendee the price which he paid for the property.   (*Maloy* v. *Berkin,* 11 Mont. 138, cited.)

*Appeal from Tenth Judicial District, Fergus County.*

ACTION for accounting and to rescind a sale.   The cause was tried before DU BOSE, J.   Plaintiff had judgment below. Reversed.

*George W. Taylor,* for Appellants.

I.   A member of a copartnership may, without the consent of his copartner, dispose of the partnership property for the purpose of discharging the partnership debts, there being no assets on hand with which such debts can otherwise be paid. Where the copartner was absent from the state such a conveyance has been sustained in *Anderson* v. *Tompkins,* 1 Brock. 456;

*McCullough* v. *Sommerville,* 8 Leigh, 415; *Gordon* v. *Cannon,* 18 Gratt. 387. Also where the copartner was not absent from the state. (*Mabbett* v. *White,* 12 N. Y. 442; *Graser* v. *Stillwagen,* 25 N. Y. 317.)

II. The next question is, Was there any fraud on the part of Vinson, and was David an innocent purchaser? Fraud is the gist of the action, and we hold that having alleged fraud, it is incumbent on the plaintiff to show the same beyond doubt, and unless fraud is shown then he cannot maintain his action. One who alleges fraud must clearly and distinctly prove the fraud he alleges. (8 Am. & Eng. Ency. of Law, 654.) If a case of actual fraud be alleged relief cannot be had by proving constructive fraud. (8 Am. & Eng. Ency. of Law, 664, note 3; *Mount Vernon Bank* v. *Stone,* 2 R. I. 129; 57 Am. Dec. 709; *Piper* v. *Hoard,* 107 N. Y. 67; 1 Am. St. Rep. 785.) Fraud must be proved by evidence so clear and strong as to produce satisfactory conviction. (*Greer* v. *Caldwell,* 14 Ga. 207; 58 Am. Dec. 553.)

*E. W. Morrison,* for Respondent.

The copartnership was formed for the purpose of engaging in the sheep business. Consequently the transfer by Vinson was not in the usual course of the business of the firm, nor for carrying out the purpose for which the firm was organized. It was clearly not within the scope of his authority. In *Osborne* v. *Barge,* 29 Fed. Rep. 725, the court, after stating the general rule governing the authority of each partner, says: "But that, as to acts not in furtherance of the business of the partnership in the ordinary way, but which may put an end to the same, or the natural result of which is to take control and management of the firm business and property from the partners, it is necessary, to sustain the validity of such acts, that it appear that the same were done with the assent of all the partners." Indeed, the rule is well settled that the authority of each copartner to dispose of the property of the firm without the consent of his copartners extends only to the usual business of the firm. (Note to *Davies* v. *Atkinson,* 7 Am. St. Rep. 377; 1 Bates on Partnership, §§ 401, 404; 17 Am. & Eng. Ency. of Law, 987, 988, note 1; 2 Lawson's Rights,

Remedies, and Practice, §§ 646, 1216, note 1.)   One partner
has no implied power, without the consent of his copartner, to
sell the property of the firm, upon the continued use of which
the business of the firm depends.   (Authorities cited, *supra;*
17 Am. & Eng. Ency. of Law, 1011, note 3; *Blaker* v. *Sands,*
29 Kan. 551; *Hunter* v. *Waynick,* 67 Iowa, 555; *Myers* v.
*Moulton,* 71 Cal. 498; *Shellito* v. *Sampson,* 61 Iowa, 40; *Mc-
Nair* v. *Wilcox,* 121 Pa. St. 437; 6 Am. St. Rep. 799; 1 Bates
on Partnership, § 338; *Mayer* v. *Bernstein,* 69 Miss. 17; *Shat-
tuck* v. *Chandler,* 40 Kan. 516; 10 Am. St. Rep. 227; *Lowen-
stein* v. *Flauraud,* 82 N. Y. 494; *Osborne* v. *Barge,* 29 Fed.
Rep. 725; *Coleman* v. *Darling,* 66 Wis. 155; 57 Am. Rep.
253; *Steinhart* v. *Fyhrie,* 5 Mont. 463.)

*Wade & Barrows,* also for Respondent.

Per CURIAM.—The object of this action, brought by a mem-
ber of a copartnership firm, as deduced from the pleadings,
appears to be twofold.

1. To obtain dissolution of the copartnership existing, as
alleged, between plainti f and defendant Vinson, in the firm
name of W. E. Vinson & Co.; to acquire an accounting, to
ascertain and state the account of each member, touching their
respective interests in and obligations to said firm; to provide
for the payment of the firm's debts out of the assets thereof;
and then to make division of the property or proceeds remain-
ing, according to the respective interests of the copartners; and,
in general, to wind up the affairs of said firm.

2. To cancel and set aside a sale of certain property of said
firm, made by defendant Vinson, one member thereof, acting
on behalf of the firm, to defendant C. C. David, not a member
of said firm, which sale is alleged to be fraudulent and void
for the reasons hereinafter set forth, as alleged in the com-
plaint.

To the end that these purposes of the action might be effec-
tual, plaintiff asked, and, on commencement of the action,
obtained, appointment of a receiver to take charge of all the
property of said firm, including the property sold to defend-
ant David, and also obtained an injunction restraining defend-
ants from interfering with the property in question.

The assignments of error brought up for consideration by this appeal relate entirely to the last-mentioned branch of the adjudication, namely, the cancellation of said sale, and dispossession of defendant David of those effects claimed to have been sold and delivered to him.  As to the dissolution, accounting, payment of debts, and winding up of the affairs of said firm, the action appears to have been still pending in the trial court when the present appeal was taken from the judgment declaring said sale to defendant David null and void.  Therefore, the proceedings, pleadings, evidence, and judgment relating to the cancellation of said sale, as shown by the record, will be reviewed upon the assignments specified in defendant's motion for new trial, which motion was overruled, and from which order, as well as the judgment, this appeal was taken.

The amended complaint, on which the action is founded, sets forth: That in November, 1890, plaintiff and defendant Vinson entered into a copartnership, on equal terms and shares, for the purpose of engaging in and carrying on the business of sheep ranching in Meagher county, Montana, under the firm name and style of W. E. Vinson & Co., and thereupon engaged in and continued such business until about October 25, 1892.  That, during the continuance of said copartnership business, defendant Vinson has wrongfully applied to his own use, out of the receipts of said business, certain money, the amount of which plaintiff is unable to state, because said defendant has neglected and refused to account to plaintiff therefor, although often requested so to do.

" III. That on or about the twenty-fifth day of October, 1892, the said defendant W. E. Vinson, without the knowledge or assent of the plaintiff, assigned and transferred his interest in the said property of the said copartnership, being the property used for carrying on the business thereof, to the defendant C. C. David, who well knew of the plaintiff's interest therein, and who now claims to be the owner thereof, and who also claims, as the plaintiff is informed, to be the owner of the entire partnership property of the said firm, by purchase from the said W. E. Vinson; and that the said C. C. David, without the knowledge or consent of the plaintiff, has taken exclusive possession of the said property, and refuses

to recognize the plaintiff's interest therein, and is conducting the business thereof upon his own account, and threatens to deprive the plaintiff of his interest therein, and refuses to account to the plaintiff therefor. Since the said transfer the defendants have also taken possession of the books and stock and all effects of the said copartnership, and ever since have prevented the plaintiff from having access to the same, or from participating in any manner in the partnership business, to the plaintiff's great and irreparable injury and damage.

"IV. That the said sale and transfer was made for the purpose of defeating and defrauding this plaintiff, in this: That the said copartnership is indebted to this plaintiff, on account of moneys advanced by the said plaintiff to the said copartnership for the purpose of defraying the expenses and carrying on the business thereof, in the sum of three hundred (300) dollars over and above his share of the capital stock thereof, and also that the said copartnership is indebted in a large sum to other parties, for the payment of which the plaintiff is individually liable, all of which the defendant C. C. David well knew at the time of the sale and transfer."

Following these allegations, the complaint sets forth a list of the property of said firm, and demands judgment: 1. That said copartnership be dissolved, and that an accounting be taken, etc., according to the usual practice in such cases; 2. That a receiver of the property of said firm be appointed, clothed with the usual power in such cases; 3. That defendants be restrained by injunction from interfering with said property; 4. That the effects of the firm be sold, and its liabilities discharged, and the surplus, if any, divided between the parties according to their respective interests.

In reviewing a case on the assignment that the findings or decision is not warranted by the evidence it is necessary to refer to the complaint to see what has been alleged as ground for the relief sought and obtained by the decision, and what issue has been formed thereon by the other pleadings, as a starting point from which to review and consider the evidence on such assignment. In looking into the complaint for the grounds alleged for annulling said sale it is found that all the averments relating thereto are comprised in paragraphs 3 and

4, quoted above, wherefrom it will be observed that while there are undoubtedly sufficient facts alleged to support an action for dissolution, accounting, and division between the copartners, or their successors in interest, according to their respective interests in the copartnership effects, the averments relating to said sale are not sufficient to show any fraud touching that matter. When stripped of verbiage the allegations of the complaint relating to the alleged fraudulent sale are to the effect that Vinson, at a certain time, "assigned and transferred his interest in the property of said copartnership" to defendant David, who well knew of plaintiff's interest therein, and who, as plaintiff is informed, claims to be the owner of the entire partnership property by purchase from Vinson; that defendant David, without knowledge or consent of plaintiff, has taken possession of said property, and refuses to recognize plaintiff's exclusive interest therein, and threatens to deprive plaintiff thereof. The further allegations found in paragraph 3 of the complaint, to the effect that defendants have also taken possession of the books, stock, and all the effects of said copartnership, and ever since prevented plaintiff from access to the same, and from participating in the business of said firm, have no bearing upon the question of the fraudulent sale, as showing grounds for its vacation. Besides, the jury found that such allegations as to the taking of the books, etc., and refusing plaintiff access thereto, were not true. Moreover, the allegation that "defendants" had taken the books includes one copartner, who could rightfully be in possession of the books and papers of said firm, but could not rightfully deprive other members of access thereto. Those allegations, however, do not relate to the matter of fraudulent sale, which is the subject of special inquiry on this appeal. The allegation that defendant Vinson "assigned and transferred his interest in said copartnership property" to defendant David without consent of plaintiff, the vendee David knowing that plaintiff had an interest therein, is not ground for avoidance of the sale of Vinson's interest. A copartner may sell his interest in a firm to any purchaser found willing to buy, or his interest may be sold under execution, without assent of the other members of the firm; and that alone amounts to no fraud on the other members, unless some pro-

vision of the partnership agreement is violated thereby, although the sale of a member's interest to a stranger is held ground for dissolution and winding up of the affairs of the firm, because the other members are not bound to continue in copartnership with a stranger, with whom they have not chosen to engage in such relation. (Parsons on Partnership, §§ 9, 106.) All the further allegations relating to the charge of fraudulent sale are comprised in paragraph 4 of the complaint, which avers that said sale—that is, the sale of Vinson's interest in the copartnership, was made for the purpose of defeating and defrauding plaintiff, in that said copartnership is indebted to plaintiff, for money by him advanced to the firm, in the sum of $300 over and above his share of the capital, and also because said firm is indebted to other parties in a large sum, for which plaintiff is individually liable, all of which was well known to defendant David at the time of said sale and transfer.

Giving these averments all reasonable force and effect, or even going beyond the rule, and giving them the strongest interpretation admissible in favor of plaintiff's case, and they fail to disclose sufficient ground to warrant the cancellation of the sale alleged; for, granting that the firm was indebted to plaintiff and others as alleged, that fact did not forbid a sale by Vinson of his interest in the firm, as alleged, if he could find any one willing to buy it. Nor did that fact relieve Vinson from liability to plaintiff for overdrafts out of the firm assets. Nor did it relieve Vinson from his liability, along with plaintiff, for the debts of the firm contracted prior to the sale of Vinson's interest. Nor did such sale relieve the firm or defendant Vinson of their liabilities to plaintiff for his advancements in an accounting. This sale of Vinson's interest may have. put his affairs in better condition to meet such liabilities; and if defendant David, having bought Vinson's interest, undertook to assume the whole property of the firm as his own, and exclude plaintiff from his rights therein, as alleged, while such conduct was ground for dissolution, accounting, and winding up of the affairs of the copartnership, in the proper action, and by interposition of a receiver, it was not ground for the cancellation of the sale of Vinson's inter-

est to David. When the affairs of the firm were thus wound up, David would, if he showed title to Vinson's interest, be entitled to Vinson's share of the residue, if any was found to belong to him on the accounting. Such is the showing of the complaint on the subject of the alleged fraudulent sale; and, while no question is raised touching its sufficiency in that regard, we must consider what its allegations are, in order to understand on what alleged facts it is proposed to cancel said sale, and to ascertain from the pleadings the issue on that subject.

Defendants made separate answers. The answer of Vinson, after denying each allegation of the complaint, for further defense, by way of new matter, alleges that by the terms of a verbal agreement, whereby said copartnership was formed, Vinson was made the sole and exclusive agent and manager of its business, with power to buy, sell, and otherwise handle and manage the property and business thereof, and also empowered to contract debts on behalf of the firm, and secure the same, if necessary, by execution of a mortgage on the firm property, or to sell the property of the firm to satisfy such debts; that, at the time of the formation of said copartnership, defendant Vinson was the owner and in possession of certain real and personal property, consisting of horses, cattle, sheep, and other personal property, together with certain corrals, fences, houses, and other improvements upon lands owned by said defendant, of the value of $4,000, as agreed by and between plaintiff and defendant Vinson in said copartnership agreement; that, according to the terms of said copartnership agreement, the whole of said property was, by Vinson, transferred to said copartnership firm, as capital stock thereof, in consideration of which transfer plaintiff agreed to pay defendant Vinson for the one-half interest in said property and in the copartnership business the sum of $2,000; that although payment thereof had been often requested, plaintiff has failed and refused to pay the same, except the sum of $209.50 paid thereon by plaintiff; that in said copartnership agreement it was agreed between plaintiff and defendant, as members of said firm, that for his services as manager of the copartnership business, to be carried on as aforesaid, defendant Vinson was to receive from the

firm the sum of $40 per month; that there is due and owing from said firm to defendant Vinson, by reason of such services, under the provisions of the contract, $1,160, which sum has not been paid, except as hereinafter stated; that, by reason of plaintiff's failure and refusal to pay his share of the expenses of said copartnership business, the firm became heavily indebted to divers parties, to wit, in the sum of $6,471, exclusive of the amount due defendant Vinson for services aforesaid; that prior to the 25th of October, 1892, and prior to the sale of certain copartnership effects mentioned below, defendant Vinson notified plaintiff of the condition of the business of said firm, and demanded of him a settlement, and further notified plaintiff of the mortgage existing on the sheep belonging to said firm to secure indebtedness to the amount of $4,500, and notified plaintiff that, unless he paid the amounts due from him to said copartnership, it would be necessary to sell part or all of the property and effects of the firm for the purpose of liquidating its indebtedness, all of which plaintiff well knew; that plaintiff failed and neglected to comply with said requests of Vinson, and Vinson, for the purpose of paying the indebtedness of said firm, and for no other purpose, sold to defendant C. C. David 1,920 head of stock sheep, 4 head of horses, 8 head of cattle, and certain other personal property of said copartnership, for the sum of $2,714, "subject to the terms and conditions of a certain mortgage of $4,500 against the said sheep, making the aggregate purchase price of said property $7,214; that the price received for said property was its full, fair, and just value"; that said sum of $2,714 so received by defendant Vinson for the sale and transfer of said property, and the whole thereof, was paid out by defendant Vinson in payment of the partnership indebtedness, except the sum of $843, which defendant retained as part payment of the amount due him from plaintiff, and the further sum of $82, still in the bank to the credit of the firm, which was reserved to pay certain indebtedness of the firm to W. W. De Witt, amounting to the sum of $76 and interest, which this defendant was restrained from paying by the injunction issued in this action; that there is still due from plaintiff to this defendant on account of the purchase price of one-half

interest in the business, and on account of wages due him as manager thereof, the sum of about $1,000.

The answer of defendant David specifically denies the allegations of the complaint relating to him, and to the alleged fraudulent purchase of said property, or an interest therein, by him, and further denies that he is insolvent, or unable to respond in damages to any extent which might be awarded to plaintiff for his interest in said property, and alleges that he (David) is the owner of real and personal property of the value of $20,000, subject to execution, but does not deny that he knew the property sold to him was copartnership effects, or that plaintiff had an interest therein as a member of said firm, or that the sale was made without plaintiff's consent, and for further defense alleges, substantially, the same facts regarding the sale and delivery of certain described property of said firm to him by Vinson, subject to mortgage, and the payment of the consideration, as set forth in the answer of Vinson, and that said sale and purchase was made in good faith, and the consideration paid therefor was a full and fair valuation of the property in question, and denies that he (defendant David) claims ownership of, or has ever taken possession of or assumed any control over, any property of said firm, except that bought by him as aforesaid; that, aside from that transaction, he has had nothing to do with, nor is concerned in, said copartnership firm.

Plaintiff, by replication, put in issue the new matter alleged in said answers, except that he does not deny the allegation of the answers that the sale to David was of certain property of the firm outright, and not of Vinson's interest therein, only, as alleged in the complaint. But plaintiff denies that David paid therefor the sum stated in the answers, or the full, fair, or just valuation thereof. The replication also admits that defendant Vinson is entitled to the sum of $960 for services rendered said firm under the provisions of the partnership agreement.

It therefore appears that two issues were raised as to the alleged fraudulent sale. One issue raised by the allegation of the complaint and answer was as to an alleged fraudulent sale of Vinson's interest in said firm, which allegation of fraud

was predicated on the fact that plaintiff Waite had an interest in said firm property, and had made advancements thereto over and above his share of the capital, and was also liable for the firm debts, all of which was known to defendant David when he bought Vinson's interest, which facts constitute no fraud, because, notwithstanding those facts, Vinson, as a copartner, had a right to sell his interest in the firm, unless conditions of the copartnership compact forbade such sale for a stated period, and no such conditions are alleged. Nor did such purchase exceed the right of defendant David to buy if he saw fit. The answer denies those allegations of the complaint, and thus raises an immaterial issue touching said sale, so far as any issue is raised between the complaint and answer. The other issue, as to the alleged fraudulent sale, and the only material issue in that respect, is raised by the new matter alleged in the answer, to the effect that, by said sale to David, certain described property of the firm was sold outright, in good faith, for the full value thereof, paid and assumed by David, which averments as to the alleged good faith of said sale, fair price, and payment were denied by the replication. This appears to have been the issue tried.

Therefore, it is apparent, and should be observed, that while defendant David may have been a proper party to the action for dissolution and accounting, as successor to Vinson's interest in the firm, by purchase, that allegation presented no ground for cancellation of the sale of Vinson's interest, and does not appear to have been relied on after defendant David answered, disclaiming ownership of any interest in the firm, but claiming to have purchased certain property thereof outright. But by the real issue relating to David, raised by the new and affirmative averments of the answer and denials of the replication, it really became an action involving two distinct causes, which could not be properly joined; that is, an action between partners for dissolution, etc., and also joining therewith an action against a stranger to the firm, to set aside a sale of firm property made to him on grounds of alleged fraud. But no question is raised as to this peculiar aspect of the case, and therefore the same is only noticed here to avoid the implication that such practice as appears in this case was sanctioned as proper.

The main assignment, and the one under which all the questions presented by this appeal may be considered, is that the evidence is insufficient to justify the finding that such sale was fraudulent, and the decision that the same be declared void.

At the trial plaintiff fell as far short of producing proof tending to show a fraudulent purpose on the part of either party to said sale as he did of alleging facts to that end·in the complaint. The evidence introduced by both parties, with scarcely any contradiction on material points, shows the state of facts alleged in Vinson's answer regarding the condition of the firm in general when said sale was made, ·and the facts relating thereto.

It appears from the evidence that plaintiff resided in the state of New York, while defendant Vinson was in sole charge and management of said copartnership business in Montana, except in so far as he was occasionally advised in relation thereto by plaintiff's agent, Walter A. Waite; that the firm was indebted substantially as alleged in Vinson's answer; that plaintiff was in default somewhat in relation to said firm, but that question pertains to an accounting between the members, a question with which we have nothing to do in this appeal.

The sheep belonging to the firm were mortgaged, as alleged in Vinson's answer, as to which mortgage, and debt secured thereby, and several renewals thereof, plaintiff appears to have had full knowledge, and there appears to have been no question raised as to its good faith and validity, so far as shown by the record; and, besides that mortgage debt, the firm was indebted to divers parties, aggregating about $2,000, as alleged by Vinson, over and above the amount due Vinson from the firm. Prior to the sale in controversy, it appears that there had been interviews between Vinson and plaintiff's agent, Walter A. Waite, and with plaintiff himself, who appears on one occasion to have been in Montana, wherein the state of business of said firm was discussed, and an adjustment between the parties, and payment of the amount claimed to be due from plaintiff to the firm and to Vinson, was requested by the latter. The books and papers relating to the firm's affairs were available for examination by plaintiff and his agent, and it appears from the testimony of Walter A. Waite that he examined said

books, to some extent, at least. In those interviews the parties also discussed the matter of the sale and purchase of Waite's interest, for which it appears he asked $5,000, but Vinson declined to pay so much therefor. It appears, also, that defendant Vinson notified plaintiff that unless a settlement of his indebtedness to the firm was immediately made, and something done to raise money to pay the indebtedness of the firm, a considerable portion of the property thereof must be sold to raise funds to pay the outstanding indebtedness thereof, and that unless such settlement and provision for payment of the debts were made, defendant Vinson would proceed to sell a portion of the firm property to raise money to satisfy its indebtedness. But no such adjustment, settlement, and provision for payment of the firm debts were made by the partners, acting together.

Under these conditions defendant Vinson, on the 25th of October, 1892, sold to defendant David certain effects of the firm, described in a bill of sale thereof, for the consideration of $2,714, paid by David therefor, subject, by express terms of the bill of sale, to the chattel mortgage thereon to secure the sum of $4,500. The jury found that such payment of $2,714 was made by David, and this finding is fully in accord with the evidence; and there is no evidence in the record to support the modification of that finding by the court, to the effect that defendant David placed in the bank, to the credit of W. E. Vinson & Co., $2,000, "but as to what amount of that money was used by Vinson in paying the debts of the firm, and as to what amount was paid back to C. C. David, is a question the court will refer to a referee to decide, with other questions involving an account between the parties." Such modification is wholly without support, because there was no evidence introduced to justify such intimation, and this record purports to contain all the evidence introduced. Fraud must be proved, and not presumed. According to the evidence disclosed by this record, David paid over to Vinson, in purchase of the property sold, said sum of $2,714, and Vinson used about $2,000 thereof in payment of the debts of the firm, as shown by a schedule of the debts paid, proved and introduced in evidence; and Vinson retained the residue of said purchase money

to apply on the indebtedness claimed to be due him from said firm. And according to the express terms of the bill of sale introduced in evidence, executed between Vinson & Co., by W. E. Vinson on one part, and C. C. David on the other, as evidence of said sale and transfer, it was provided that the property sold and therein described passed to David, subject to said mortgage of $4,500 on said stock sheep. Hence, David was obliged to relieve the mortgaged property of that encumbrance, or lose his investment therein. The consideration paid for said property, subject to the mortgage, is shown by the evidence to have been its full market value at the time of said sale, and greatly exceeding its value at the time of the trial, because, soon after the sale, there was an extraordinary decline in the value of sheep. In view of the conditions shown in evidence, said sale was expedient and highly beneficial to the interests of the firm, from every consideration, had it been allowed by plaintiff to stand. Nor is there any fact shown in relation to said sale which tends to support the allegation of fraudulent purpose on the part of either defendant in relation thereto. Nor is any fact shown from which, by a justifiable implication, it can be presumed that either defendant thereby sought or intended to defraud the plaintiff or said firm. The price paid, and the use of the funds in discharging the debts of the firm, and the conduct of the purchaser in offering to rescind the sale on return of the price paid, as shown by the evidence, and not disputed, except by unsupported averment of the replication, all tend to contradict the allegation of fraudulent purpose on the part of defendants in said sale and purchase.

The only question of importance affecting said sale to David is whether such a sale of a large portion of the firm property by one member, without the concurrence of the other member—of which fact the vendee was cognizant—may be avoided, on complaint of the nonconcurring member, as for constructive or implied fraud in law. This question may, by liberal interpretation, be said to have been raised by the pleadings. The complaint alleges that when defendant David bought, he knew of plaintiff's interest in said property as a member of said firm, and that the sale was without plaintiff's

consent. It is true the complaint might justly be put out of consideration, as entirely insufficient, for it avers a sale of Vinson's interest in the firm, without plaintiff's consent, which averment, as we have seen, is insufficient to avoid such sale. But looking at the complaint along with the other pleadings, with somewhat liberal construction, as no point is made as to the insufficiency of any of them—viewed also in the light of the evidence introduced—it seems proper to regard the showing as an affirmance and admission that, when defendant David purchased said property of the firm he knew plaintiff was a member interested therein, and was aware that plaintiff did not concur in the sale. We have given much attention to this point, and find that the authorities, if cases were viewed separately, might be said to exhibit considerable conflict of opinion. It is held in certain cases—and very justly, we think—that such a sale was unwarranted, where there were no circumstances shown which necessitated the sale for the protection or advantage of the firm, and ought to be set aside, or the purchaser held to have only succeeded to the interest of the member making such sale, and be required to account to the nonconcurring member for his interest. (1 Bates on Partnership, §§ 401–05, and cases cited. This, of course, would be done equitably to the parties; and if the price paid was the fair value of the property, and the purchase money had been used to pay firm obligations, for which the complaining member was liable, or in part for that purpose, and in part been retained by a partner found on an accounting entitled thereto, there would hardly be any material injury to the complaining member through the sale. It certainly would not be equitable to hold that the purchase price might be retained, and go to the liquidation of firm debts for which the complaining partner was liable, and at the same time set aside the sale, and deprive the purchaser of the property bought, without any restoration of the purchase money, as was done in this case. On the other hand, there are authorities which affirm the right of a partner in management of the firm business to sell sufficient of the firm property, in bulk, to raise funds to pay its obligations. (Parsons on Partnership, 4th ed., §§ 108–10, and cases cited.) It is worthy of consideration whether this is not a just and

equitable holding, too; otherwise, the nonconcurring partner might, through sheer stubbornness, prevent an advantageous sale necessary to raise funds for payment of firm debts, and thereby subject the firm property to seizure, forced sale at diminished price, as well as having the proceeds further diminished by expense of such proceedings, thereby working great loss to the firm, and consequently to the members seeking to promote the interests of the firm through such sale. Mr. Parsons states his conclusion, from investigation of the subject and authorities, that such a sale, necessitated by the condition of the firm affairs, and in promotion of its best interests, if honest, and "without bad faith on the part of any party, we should say it was a valid transaction, which the law would enforce." (Parsons on Partnership, 4th ed., § 109.) No doubt, both lines of cases are founded on just principles, when applied to the circumstances involved, and in that view the decisions are harmonious; and it is observable that the cases, from the language used, seem to contemplate that under other circumstances the decision might be otherwise.

We return now to some further consideration of the facts shown in relation to the sale in question in the case at bar.

This is not an action by creditors to avoid the sale of property, on the ground that it was made with intent to defraud them of their rights. If it were, they would fail completely upon the facts shown in this case, because no fraud which would be sufficient to avoid said sale on the complaint of creditors has been shown. But this is an equitable action by one interested in the property, as joint owner, to rescind the sale because of alleged fraud perpetrated upon him through that transaction. In such a case the first inquiry which arises is whether he who seeks the equitable interference of the court has also done, or offered to do, equity in the premises. (*Maloy v. Berkin*, 11 Mont. 138.) That question arises here, and must be answered in the negative, against the plaintiff. As the case is disclosed by the record, this sale was made by one partner, for the full value of the property sold, as appeared when the sale was made; and for a price exceeding the real value of the property, according to the conditions unforeseen at that time; and a large part of the purchase price was used

in the liquidation of the debts of the firm, for which plaintiff was liable. But, through this action, he seeks the cancellation of said sale without any offer or provision whatever to restore to David the amount paid in the purchase of said property.

Even where property is bought under circumstances of oppression and fraud, which are entirely absent from this case, equity does not cancel the sale without provision for restoration of the price paid. (*Maloy* v. *Berkin*, 11 Mont. 138, and cases cited.) But had such offer been made, or had defendant David's proposition to that effect been accepted, it would not have been necessary to go to court to obtain a cancellation of said sale; for it appears, without dispute, from the evidence, that after the sale was made several interviews were had between plaintiff, represented by his attorney and agent, and David and Vinson, in respect to said sale, wherein it appears defendant repeatedly offered to rescind the sale, and deliver the property back, if the firm would restore to him the money he had paid in said purchase, and the expense he had been to in caring for the sheep after delivery to him. And, moreover, on one occasion, defendant David went further, and offered to plaintiff, through his agent and attorney, a complete rescission of said sale, and restoration of the property to the firm, on the repayment to him of the money which he had paid to the firm in said purchase, and he (David) would suffer the loss of such expense, amounting to about $400. And furthermore, there being a dispute between Waite and Vinson as to the portion of said purchase money retained by Vinson to apply on his claim against said firm, David offered to allow the sale to be rescinded on payment to him of the purchase price, which had been used directly for plaintiff's benefit, in payment of the debts of the firm, to the amount of about $2,000, outside of Vinson's claim; and David offered to depend upon Vinson, individually, to restore that portion of the purchase price which he had retained to apply on his claims against the firm. This offer eliminated, as far as defendant David was able, all disputed conditions upon which plaintiff Waite could rightfully refuse to concede to the equitable condition on which David offered a rescission of said sale. But it appears plaintiff and his counsel entirely ignored those propositions, and

proceeded in this action to take said property away from David, through the receiver, in the attempt to cancel said sale, and recover the property sold, at the same time retaining the benefit of the purchase price paid by David, which went to the payment of obligations for which plaintiff was not only liable as a member of said firm, but, if its assets were insufficient to liquidate its liabilities, he was liable therefor wholly and individually, as between himself and the creditors of the firm. After the property was taken from David, as we are informed by counsel, it was not retained for the firm by payment of the encumbrance thereon, but the mortgage was foreclosed by the mortgagee. Thus, as a result of this unwarranted attack on said sale, the mortgaged property was taken away from David without the slightest benefit to the firm, but injury to all concerned.

The case, so far as it relates to said sale, and to defendant David, exhibits an abuse of the processes of the court. The facts shown were insufficient to warrant the cancellation of said sale to David, but warranted the contrary decision, which should have been made on the evidence produced.

The judgment declaring void said sale to defendant David should therefore be reversed, and the case is remanded, with direction to enter judgment in favor of defendant David, to the effect that no cause for cancellation of the sale of said partnership effects, described in said bill of sale to him, has been shown, and therefore that plaintiff take nothing by said action, so far as it relates to defendant David, and that said defendant have judgment against plaintiff for his costs expended therein; and it will be ordered accordingly.

*Reversed.*

PEMBERTON, C. J., and HARWOOD, J., concur.   DE WITT, J., concurs in the reversal.