Shuee *et al. v.* Shuee.

No. 11,182.

## SHUEE ET AL. *v.* SHUEE.

CONTRACT.—*Rescission.* — *Equity.* — *Pleading.* — *Complaint.* — *Demurrer.* — In equity, the court may require a plaintiff to do equity, as a condition upon which it will grant relief, and a failure to show in the complaint to rescind a contract, that the plaintiff has offered to do equity before suit brought, if the complaint offer to submit to the order of the court in that respect, does not necessarily render it bad on demurrer.

SAME.—*Family Settlement.*—Complaint by a widow to set aside a family settlement, by which she had accepted payment of a sum greatly less than she was by law entitled to, in full of her share of her deceased husband's estate. The complaint offered to submit to such terms as the court would decree, but did not aver an offer to rescind or repay before suit brought. *Held,* that it was sufficient on demurrer.

SAME.—*Fraud.*—A husband, seventy years of age, died intestate, owing no debts, with an estate, exclusively personal, of $21,529, a childless widow and three children by a former marriage surviving. While living, he had given to his children all his real estate and $6,000 in cash, and at the same time $9,000 to the wife, for which she had executed a receipt to him as for "my share of division in the estate." At the marriage she had nothing. He had accumulated his estate, was sixty years old and eight years her senior. After his death, it being rumored that she claimed a further share, there was a meeting of the heirs and herself, attended also by a reputable and intelligent neighbor, who was a mutual friend, of kin to all the parties and had their confidence, whose presence the heirs had requested in the belief that he might be able to promote an amicable adjustment. All parties knew the facts, and the widow was a woman of ordinary mind, intelligence and business experience, but in infirm health temporarily. The only statement by the neighbor to her, subject to question, was that the $9,000, which she had received, would be charged to her in the final settlement. She named the sum of $2,000 as satisfactory; her proposition was accepted, the money paid, and she executed an assignment to the heirs of all her interest in the estate.

*Held,* that there was no fraud, actual or constructive, and no ground for annulling the settlement.

From the Tippecanoe Circuit Court.

*J. R. Coffroth, T. A Stuart, G. O. Behm, A. O. Behm, C. E. Lake* and *J. S. McMillin,* for appellants.

*W. H. Bryan, W. P. Wood, W. D. Wallace* and *W. C. L. Taylor,* for appellee.

Shuee *et al. v.* Shuee.

MITCHELL, J.—Susan Shuee brought her bill in equity in the circuit court of Tippecanoe county, asking that upon the facts stated therein she should be relieved from a certain deed or contract of settlement, executed by her, whereby she had assigned and released her interest in the estate of David Shuee, her deceased husband, to his children by a former marriage. The deed which is exhibited with her bill is of the tenor following:

" Whereas, my late husband, David Shuee, deceased, shortly prior to his death, made a partial distribution of his estate by conveying by deeds of conveyance, in which deeds I joined as his wife, certain real estate in Tippecanoe county, Indiana, to the children and heirs of said David Shuee; and whereas, I have heretofore received of said David Shuee the sum of nine thousand dollars ($9,000), to be applied on my interest in the estate of said David Shuee, deceased, and have this day received of William D. Shuee, administrator of the estate of David Shuee, deceased, the sum of five hundred dollars ($500) as and for the amount allowed me by law as the widow of said David Shuee, the receipt whereof is hereby acknowledged: Now, in consideration of the further sum of fifteen hundred dollars ($1,500), to me in hand paid by William D. Shuee, Amanda Kirkpatrick and Josephine Chappell, the receipt whereof I hereby acknowledge, I hereby assign and set over to the said William D. Shuee, Amanda Kirkpatrick and Josephine Chappell, the children and heirs of said David Shuee, deceased, all further right, title and interest which I may have, of whatever nature, in and to the estate, both real and personal, of said David Shuee, deceased.

" Dated the 28th day of May, 1881.        SUSAN SHUEE."

Issues were duly made, and on the hearing the court, having been requested to do so, found the facts specially and stated its conclusions of law thereon.

The material facts found were that David Shuee and Susan Shuee were married in May, 1871, and after living together amicably for a period of about nine years and a half, David

Shuee died, leaving three children by a former marriage as his only heirs at law, and his widow, who was his second wife, and with whom he had no children, and leaving a personal estate amounting in value to about $21,529, and leaving no debts and no real estate.

The plaintiff had been married twice before her marriage to Shuee, and had children living by each of the former marriages. She had no property at the time of her marriage with Shuee, who, previous to that time, had acquired the bulk of all his property, and who, at the time of his death, was aged about seventy, the plaintiff being about eight years his junior.

In 1879 the deceased gave to each of his three children $2,000, giving to his wife at the same time $3,000, and in the year 1881 he gave to his children all of his real estate—$18,-000 in value—about the same time giving his wife in cash $6,000.

At the time the last sum of money was paid her a receipt was prepared by the direction of her husband, which, after some changes, made to suit the plaintiff, was signed by her, and which reads as follows:

"April 20th, 1881.

"This certifies that I have received nine thousand dollars of David Shuee, being my share of division in the estate."

On the 27th day of May, 1881, the plaintiff having waived her right to administer upon her deceased husband's estate, William D. Shuee was duly appointed and qualified as administrator, and learning that their step-mother was making further claims upon the estate, the heirs procured the assignment hereinbefore set out to be prepared by their attorney, leaving the date and amount of consideration blank. They then procured a Mr. Davidson, who resided in the neighborhood, to meet them at the plaintiff's residence, that being also the residence of Josephine Chappell, one of the heirs, to assist in negotiating a settlement with the plaintiff. It is found that Davidson was an old resident of the neighborhood, a man esteemed for his intelligence, judgment and probity, who some-

times assisted litigants in the neighborhood before magistrates, had some experience in the settlement of estates, was a practical farmer, and not a lawyer. He enjoyed the entire respect and confidence of the plaintiff and defendants as well, and was related to all the parties. He was selected by the heirs because of their belief, that on account of his character and relations he would be better able to bring about a settlement between the parties than they themselves.

The plaintiff, at the time, was in a somewhat temporarily enfeebled condition of health, was a woman of fair average mental force and intelligence, with such business experience and capacity as are ordinary with women.

The heirs and Mr. Davidson having assembled at the plaintiff's residence on the 28th of May, 1881, she was informed by Mr. Davidson that the heirs desired to ascertain from her what she would take in addition to what had been paid her and release to them all her claims in the estate. After negotiations were had back and forth between the heirs and the plaintiff, such negotiations being conducted by Mr. Davidson, the plaintiff fixed her price at $2,000, saying that if she did not get that she would not take anything.

The contract was closed at $2,000, and the paper correctly read over to her before it was signed, William D. Shuee paying the money over to her out of funds which were 'in his hands as administrator, but he at the same time distributed $1,500 among the heirs, so that in effect each of the heirs paid $500 of the $1,500, while the administrator paid $500 to plaintiff as widow.

During the negotiations, the plaintiff, as it appears, was in no way misinformed as to the amount, value or condition of the estate of her husband; she was advised, however, by Mr. Davidson that in view of the fact that she had received $9,-000 from her husband in his lifetime, he thought she ought to settle with the heirs on the basis proposed; and he also told her that the $9,000 which she had received would be charged against her in the final settlement.

The plaintiff has, ever since the settlement, retained the money paid her, and has not offered to rescind the contract or return all or any part of the money, nor has she brought it into court, but she does aver in her complaint that she is ready to abide the order of the court in that regard, and she also made a like offer at the trial.

The court inferred from the foregoing facts that the deed of settlement was procured by constructive fraud, and stated as a conclusion of law that it ought to be set aside, and that an offer to rescind before the commencement of the suit was not necessary, and that the plaintiff should recover.

It is urged that the court below should have sustained a demurrer to the bill, because it failed to show an offer to rescind on the part of the plaintiff before filing the bill, and it is argued that because it appears from the facts as found by the court, that no offer to rescind was made, nor to return the money paid as the consideration of the settlement, before the suit was commenced, the court could make no decree in the plaintiff's favor setting aside the settlement.

It is always within the power of a court of equity, where its decree is invoked, to require as " the price of its decree," that the person invoking it shall submit to equitable terms, and accordingly a chancellor always inquires concerning the equities which the plaintiff must do, in order that he may be entitled to the relief which he seeks. Whenever any benefit has been received under a contract which the court is asked to set aside, the court will fasten a trust on the conscience of the party, in respect of such receipts, and direct an account and repayment.

As was said by the vice-chancellor in the case of *Hanson* v. *Keating*, 4 Hare, 1: " It decides in the abstract, that the court, giving the plaintiff the relief to which he is entitled, will do so only upon the terms of his submitting to give the defendant such corresponding rights (if any) as he also may be entitled to in respect of the subject-matter of the suit." Or

as Lord Erskine put it in *Radcliffe* v. *Warrington,* 12 Vesey, Jr. 332 : " The question is, not, what the court must do, but, what it may do " under all the circumstances.     *Quinn* v. *Brittain,* 1 Hoff. Ch. 353 ; *Hopkins* v. *Snedaker,* 71 Ill. 449 ; *Whelan* v. *Reilly,* 61 Mo. 565 ; *Comstock* v. *Johnson,* 46 N. Y. 615 ; *Willard* v. *Tayloe,* 8 Wall. 557 ; *Miller* v. *Cotton,* 5 Ga. 341.

If the plaintiff in this case is entitled to have her deed of assignment cancelled, then she will be let in to share in a fund from which she is entitled to receive a much larger sum than she has in her hands, and having offered in her bill, and at the hearing, to submit to such decree as the court should award her, the fact that she did not return, or offer to return, the sum paid her, is no obstacle in the way of the jurisdiction of the court.     Bisph. Prin. Eq., section 43.

We are now to determine whether, upon the facts found by the court, an inference of constructive fraud arises justifying the conclusions of law stated.

We will first consider the agreement with which we are here concerned as falling within the class denominated " family settlements." In one aspect of the argument, plaintiff's counsel apply to the transaction the rules and principles applicable to sales of expectancies or reversionary interests in estates, but it is not perceived that those rules are involved to any extent.     The subject-matter here was a sum of money and personal securities belonging to the estate of David Shuee, deceased.     The amount was fully ascertained ; the estate owed no debts ; the persons interested were, so far as appears, fully capable of settling the estate by a division of the assets as well without as with administration, and but for the question of their respective rights, in view of what had been agreed to when previous divisions had been made during the lifetime of the decedent, they might as well have divided up the assets then as later.     Nor had the doctrines applicable to trustees and *cestuis que trust* more than an incidental application to the case.

The substance of the transaction was that the three chil-

dren of David Shuee by a former marriage, having heard after the death of their father, through Mr. Graves, that the plaintiff, their step-mother, was claiming to be entitled to share in the estate of their father, sought the intervention of a mutual friend, and with him met at the homestead for the purpose of negotiating a settlement and purchase of her interest. The question was mooted whether or not the $9,000 which she had received during the lifetime of her husband would or would not be taken into the account against her upon the final settlement. Something was said by Mr. Davidson, in answer to an inquiry from her, as to what he thought she ought to do, in view of the liberality of her husband toward her in his lifetime.

The amount of the estate was fully disclosed to her; the amount which she had received, and what she ought to do in view of that fact was set before her by Mr. Davidson, who also expressed the opinion that the sum already received by her would be charged against her in the final settlement of the estate, and, after negotiation back and forth, an amount named by the plaintiff was agreed upon, the contract previously prepared was read over to and signed by her, and the money paid and the settlement completed.

There was, at the time of the negotiation, before the minds of the parties, the amount of the estate, the amount which had been distributed in his lifetime by the husband to his wife and children, and the difference of opinion concerning her right to participate farther, and the extent to which she was entitled to share, if at all. The settlement of this question is to be regarded in all its essential features a "family settlement."

The circumstance that the son, William D. Shuee, had been appointed administrator of the estate the day before the settlement was made, can have no controlling influence, as this was all known to the plaintiff. The settlement must stand or fall on its own merits as such.

Family settlements, when made in good faith and with full

disclosure, are looked upon with favor in equity, and will be sustained by the courts, "albeit, perhaps, resting upon grounds which would not have been considered satisfactory if the transaction had occurred between strangers." All such agreements are favorably regarded in courts of equity, and are supported not only as beneficial in themselves, but as conducing to peace and harmony, and it is universally held, that in order to set aside such a settlement, overreaching fraud or mistake must be shown. Where, upon investigation, it is found that nothing of the kind exists, the settlement should be upheld.

Where a doubt or dispute exists with respect to the rights of parties interested in an estate, and all have the same knowledge or the means of obtaining knowledge in relation to the circumstances in which their rights are involved, and there is no concealment, misrepresentation or other overreaching, a settlement of such doubt or dispute is to be upheld and enforced, unless it turns out to be so unfair as to be manifestly unconscionable. Bisph. Prin. Eq. 189; 2 Pomeroy Eq. Juris., section 850; *Shartel's Appeal*, 64 Pa. St. 25.

Within every rule applicable to family compromises or settlements, this agreement should be maintained. Aside from the consideration that this was a family settlement, we have considered the transaction on its inherent merits, and without going into the details, we are of opinion that even eliminating from this settlement the favor in which it ought to stand as a family settlement, it should not fall under the condemnation of having been obtained by fraud, either actual or constructive. With the settlement as it is, the widow and childred of David Shuee will have participated in his estate on a basis of fair equality; with the settlement abrogated she will possibly be entitled to receive such a sum as, added to what she has already received, will be out of all just proportion to the amount which, under all the circumstances, she should receive.

The conclusion at which we have arrived is, that the inference of fact, that there was constructive fraud in procuring

the plaintiff to sign the settlement, is not warranted by the facts found, and that in stating its conclusions of law for the plaintiff the court erred.

Upon the facts found the conclusions of law should have been for the defendants.

The judgment is reversed with costs, with directions to the court to proceed in accordance with this opinion and enter judgment for the defendants.

Filed Jan. 30, 1885; petition for a rehearing overruled April 4, 1885.