W. F. THAYER *et al.* v. W. P. KNOTE *et al.*

No. 10528.

59 181
59 325
59 181
61 20
59 181
71 380

1. MISTAKE IN JUDGMENT— *as to description of lands affected, may be corrected, after term, by action brought for the purpose.* A reformation or correction of material mistakes, in judgments and orders of court constituting evidences of land title, may be had by petition in equity, filed in the court in which such mistakes occurred, at a term succeeding the one at which they were committed.

2. RESCISSION OF CONTRACT— *decreed where one party with full knowledge takes advantage of other party's material mistake.* When a person ignorant of his ownership of a valuable

property right, sells it for an inadequate consideration, and transfers it by an instrument in which it is not specifically mentioned, and under which title to it passes only by construction of loose and general terms, and the purchaser has full knowledge of it, and of its value, and of the owner's ignorance concerning it, equity will adjudge the rescission of the contract of sale as fraudulently obtained.

3. ——— *offer to restore all received under contract not necessary before suit, but sufficient if made in petition.* As a general rule, where equity requires the restoration of what has been received under a contract as a condition to its rescission, it is sufficient to make the offer of restoration in the petition, and not necessarily before the bringing of suit.

Error from Butler District Court. C. W. Shinn, Judge. Opinion filed March 5, 1898. *Reversed.*

*J. Mack Love*, for plaintiffs in error.

*A. L. Redden*, for defendants in error.

DOSTER, C. J. The plaintiff in error, W. F. Thayer, was the owner of a mortgage given by the defendants in error, Emeline and Robert M. Hunter, on the southeast quarter of section 29, township 29, range 5 east, in Butler county. He filed a petition to foreclose it, making the defendant in error, W. P. Knote, a party. Knote in his answer alleged among other things that he was the owner of the mortgaged premises. The court made a general finding that '' all the allegations in plaintiff's petition are true as therein alleged ''; but by mistake of plaintiff's counsel who prepared the journal entry of judgment, and the oversight of defendant's counsel who approved it, the land was misdescribed as the northeast quarter of section 29, township 29, range 5, east. Following this judgment, the clerk issued an order of sale to the sheriff, in which the land was likewise misdescribed as the northeast quarter, and the sheriff advertised and sold it by such erroneous description, and also in his return of sale similarly

misdescribed it. In the plaintiff's motion for confirmation of sale, and in the order of confirmation, the land was correctly described as the southeast quarter. In the sheriff's deed executed to A. D. Prescott, the purchaser and one of the plaintiffs in error, the land was again misdescribed as the northeast quarter. Prescott took possession, through a tenant, of the land intended to be sold, and so far as the record discloses has continued in its possession. It is admitted, however, that this purchase was made by him as the agent of Thayer, the mortgagee.

The foreclosure sale did not satisfy the judgment in full by nearly $1800; and about two years after the sale the defendant in error, W. P. Knote, purchased the deficiency judgment for $150. This purchase was made through the Johnson Loan & Trust Company, the agent of Thayer. Prescott, who as the agent of Thayer purchased the land at the foreclosure sale, testified that Knote gave to him as his reason for desiring to purchase the deficiency judgment that "he was under some obligation to the Hunters and that he did not want the judgment standing against them." Knote did not testify, and there is no evidence in the record contradictory of this statement by Prescott of Knote's reasons for the purchase. The negotiations for the purchase of the judgment were evidenced by letters written by the Johnson Loan & Trust Company, agents for Thayer, to one R. W. Campbell, who in turn communicated their contents to Knote. These letters show that Knote at first desired, not only an assignment which would carry the deficiency judgment, but also the original note upon which it was founded; and that this form of assignment was refused for the reason that the note and mortgage had been canceled by the judgment rendered in the foreclosure sale, and such cancellation entered upon the

mortgage records. Whether the facts stated in these letters as reasons for refusing to make the form of assignment desired by Knote really existed, the record before us does not show; neither is it material. The supposition of such facts was stated as a reason for refusing the terms of assignment proposed by Knote. The assignment was made in the following form :

"*In the District Court of Butler County, Kansas.*

"W. F. THAYER, *Plaintiff*, v. EMELINE HUNTER *et al.*, *Defendants*. Assigment. Judgment rendered November 28, 1890, for $2068.30, and costs.

"For value received I, W. F. Thayer, plaintiff in the above entitled cause, do hereby assign, transfer and set over unto W. P. Knote the judgment rendered in the above entitled cause in my favor against Emeline Hunter and Robert M. Hunter, and for any and all balance that may be due thereon, and any and all rights existing or that may arise thereunder. All done without recourse on me.

"Witness my hand at Concordia, New Hampshire, on this 31st day of July, 1893. W. F. THAYER."

Upon procuring the assignment, Knote, as assignee, entered satisfaction of the deficiency judgment on the records of the court, and also entered satisfaction of the mortgage upon the records in the office of the register of deeds.

In November following the execution of this assignment, Thayer, the plaintiff in error, having discovered the mistakes of land description existing in the record of his foreclosure proceeding, brought suit to correct the description in the journal entry of judgment, and to set aside the sheriff's sale of the misdescribed land, and for an order to sell it by its correct description. To this the Hunters, the mortgagors, Prescott, the purchaser at the mortgage sale, and Knote, the assignee of the deficiency judgment, were made parties. Knote answered by setting up his purchase and instrument of assignment, and also alleged the two and

three years' Statutes of Limitations in bar of the action. The plaintiff in his reply alleged his ignorance of the mistakes of land description in his foreclosure proceeding at the time of their commission, and his recent discovery of them, and also alleged that Knote had full knowledge of such mistakes, and knowledge of the plaintiff's ignorance of them, and that, having such knowledge, he sought to defraud and did defraud him in procuring the assignment of the deficiency judgment. In this reply the plaintiff tendered back the money paid by Knote for the purchase of the assignment, and also interest on the amount.

Neither the petition nor the reply of plaintiff prayed for a rescission of the instrument of assignment, and, so far as the above stated allegations of the reply are concerned, they constituted what in pleading is called "a departure." They departed from the statement of the cause of action set out in the petition and alleged new and independent grounds for relief against the defendant Knote. However, no objection upon this score was made on the trial of the case, nor has any been made to us in the briefs or oral argument of counsel, and we shall therefore treat the new matter set out in the reply as though it constituted a part of the petition. While the plaintiff did not, either in petition or reply, in terms pray for a rescission of the instrument of assignment, he did, in the reply, tender back to the defendant Knote the money paid for the purchase of the assignment, and the interest on the same, and pray that the court order that it be received in full of Knote's interest. The right to have this done necessarily involves a rescission of the contract, and we shall therefore treat the pleadings as though a formal prayer for rescission had been made. The court below made a general finding in defendant's favor and rendered judgment thereon. From this

finding and judgment the plaintiff below, and Pres
cott, one of the defendants, prosecute error to this
court. The case can now be disposed of in shorter
terms than were necessary to state the facts.

The case of the plaintiff in error, plaintiff below, is
in equity, for the reformation of one instrument and
for the rescission of another — for the reformation or
correction of the foreclosure proceedings and for the
rescission of the instrument of assignment. It is
maintainable in both particulars for the relief de-
manded. The existence of the right to
maintain equitable actions for the cor-
rection of mistakes in judgments was
decided in the case of *National Bank v. Wentworth*, 28
Kan. 183. In that case it was remarked by Mr. Jus-
tice Brewer —

1. Mistake in judg-
ment corrected,
how.

" It is one of the unquestioned powers of a court of
equity to correct mistakes ; it reforms instruments
whenever it satisfactorily appears that by mutual
mistake such instruments do not express the agree-
ment of the parties ; and this power is not limited to
the mere reformation of instruments executed by the
parties. It extends to judgments, decrees, and in
fact almost every, if not every, paper or document by
which the rights of parties are affected."

Other courts have held the same. *McClure v. Bruck*,
43 Minn. 305 ; *Quivey v. Baker*, 37 Cal. 465 ; *Snyder v.
Ives*, 42 Iowa, 157.

Upon the trial of the case under consideration
nearly all the evidence was directed to the time at
which the plaintiff's attorney discovered the misde-
scription of land in the sheriff's deed and the journal
entry of foreclosure. This for the purpose of ascer-
taining whether the right of action had become barred
by the Statute of Limitations. No offer was made to
prove that the plaintiff himself knew of these errors
of description. Passing by the question whether in

such case as this the knowledge of the agent. or attorney can be so imputed to the principal as to start the Statute of Limitations running against him, we hold that in this case no such statute had run in bar of the right of action. The foreclosure judgment in which the misdescription first occurred was rendered November 28, 1890, and the subsequent mistakes of course occurred at later dates. The suit for reformation was begun November 24, 1893, therefore no longer limitation than two years had run. However, the two year limitation does not apply because the action was not one " for injury to the rights of another not arising on contract." That limitation applies to the perpetration of an injury by *one person* to the rights of *another*; while the injury, if such it may be called, that was perpetrated in this case, was an injury by the plaintiff to himself. Nor was the action one "for relief upon the ground of fraud." No fraud was charged against anyone in the making of the mistakes of land description. So far as fraud was charged in the case, it was against the defendant Knote in procuring the instrument of assignment, but that occurred only about three months preceding the institution of the suit for reformation and rescission.

That the plaintiff in error did not intend to execute an instrument of assignment which would defeat his equitable right to a correction of the record of foreclosure proceedings is obvious. He could not have so intended, because he was not aware that mistakes needing correction had occurred. That he intended to do nothing more than assign his deficiency judgment is apparent. His agent refused a proposition for an assignment of more than the deficiency judgment. While the instrument contains a clause of general signification, importing the transfer of " any

2. Contract rescinded where one party takes advantage of other's mistake.

and all rights existing or that may arise " under the judgment, the paper as a whole, construed in the light of written negotiations preceding its execution, makes it quite clear that nothing passed by virtue of its terms to the defendant Knote, other than the unpaid portion of the judgment. It gave to Knote no rights in or to the note and mortgage upon which it was founded, none in or to the mortgaged land, nor any right to object to the plaintiff's demand for a correction of the foreclosure proceedings. That the defendant Knote was aware of the mistakes in these proceedings, and also aware that the plaintiff upon his part was ignorant of them, there can be no reasonable question. He sought to advantage himself through the plaintiff's ignorance, and to procure for a comparatively small sum not only a judgment of large amount, but also to secure a point of vantage from which he might obtain a quarter-section of land, which he knew in equity belonged to another. Happily, the law will neither aid him, nor refuse to stretch forth its arm to prevent the execution of his design. Equity will adjudge the rescission of an instrument executed through the mutual mistake of the parties to it, and will also adjudge the rescission of it for a mistake of one of the parties and fraud of the other. It is fraudulent for one party possessing full knowledge of all the facts to take advantage of the ignorance or mistakes of the person with whom he is dealing. It is fraudulent for him to obtain a contract with knowledge that the one dealing with him is materially in error in regard to its terms, or materially in error in regard to the facts necessary to enable him to intelligently act. *Welles v. Yates*, 44 N. Y. 525 ; Beach on Modern Equity Jurisprudence, vol. 2, § 544.

The right to equitable relief for the reformation of instruments and for their rescission rests on substan-

tially the same grounds, but it is held in some of the cases, as one instance of distinction between them, that while an instrument cannot be reformed unless the mistake in its execution was mutual, it may be rescinded or canceled though the mistake is that of one party alone. Beach, *supra*, vol. 2, § 555. Be this as it may, we have no hesitation in holding that in such a case as this, where the mistake was on one side only, and such mistake was taken advantage of by the other, to the end of reaping large benefit from the ignorance of the party with whom he dealt, equity will decree the transaction to be voidable, and will restore the parties to their original situation. Such a case is to be distinguished from one where a vendee, having superior knowledge of the value of property on account of mines or other latent qualities unknown to the vendor, buys it without artifice or unfair dealing. In such case the seller not only parts but intends to part with all he had. His ignorance consists in a lack of knowledge of the value of his property. In this case the seller's ignorance was of the *existence* of what he had, not of the existence of latent qualities in a thing which he knew he had. He parted with something he did not know he had, but with which he would not have parted had he known of it.

The plaintiff in error offered to restore the consideration money paid for the instrument of assignment, and interest on the same. Objection is made

3. Offer to restore all received under contract not necessary before suit.

that this offer should have preceded the bringing of the suit. It is usual in such cases to make the necessary tender before the institution of the proceeding, but equity will not refuse relief because it was not then done. It will, however, require it to be done as a condition to granting the relief prayed for. Equity only requires a suitor to do equity, not necessarily in the first instance

except in his bill, to offer to do it. Daniell's Chancery Pleading and Practice (6th ed.), vol. 1, 385; *Shuee v. Shuee*, 100 Ind. 477.

The judgment of the court below is reversed with directions to proceed in accordance with this opinion.