CLARK *et al.* v. O'TOOLE *et al.*

No. 1638, Okla. T.    Opinion Filed March 9, 1908.

(94 Pac. 547.)

1.    CANCELLATION OF INSTRUMENTS—Deeds—Fraud—Prima
Facie Cause of Action.    In an action for rescission and cancellation, where the proof adduced by plaintiffs shows that they were the owners of a tract of land in Oklahoma; that defendants were the owners of a tract of land in Missouri; that, relying on certain false and fraudulent representations made by defendant to plaintiffs, they mutually agreed to and did exchange said lands, together with warranty deeds therefor; that the lands in Missouri were shortly thereafter ascertained by plaintiffs not to be as represented and a part thereof wholly worthless; that thereupon plaintiffs promptly notified defendants to that effect, and offered to rescind the trade and reconvey the lands to defendants; that said lands had been kept by them in **statu quo**— is sufficient to prove a **prima facie** cause of action and a demurrer to the evidence, sustained by the trial court, was error.

2.    SAME—Pleading—"Offer to Restore"—Sufficiency.    In an action for rescission and cancellation of a deed fraudulently obtained, an allegation in the petition that plaintiffs are ready and willing to execute and deliver a deed to the land traded for, to defendants, is a sufficient "offer to restore," to bring them within the terms of section 827, Wilson's Rev. & Ann. St. Okla. 1903.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; before B. F. Burwell, Judge.*

Action by John D. Clark and Elizabeth Clark against Thomas O'Toole and Mary O'Toole.    Judgment for defendants, and plaintiffs bring error.    Reversed and remanded.

*James L. Clark,* for plaintiffs in error.
*Shartel, Keaton & Wells,* for defendants in error.

TURNER, J.    It seems from the very confused state of this record that, at the time the Supreme Court of the territory of Okla-

homa handed down its opinion herein, there was then pending in this cause a motion to dismiss which the court seems to have passed over *sub silentio*. In rendering its opinion the court affirmed the judgment of the lower court upon the ground that "there is no statement of recital in the case-made that it contains all the evidence introduced upon the trial," but, on motion for a rehearing, it being ascertained that the case-made did contain such recital, the motion was sustained, and the case is now before us on rehearing.

This is a suit in equity brought by the plaintiffs in error, plaintiffs below, against the defendants in error, defendants below, on September 26, 1901, in the district court of Oklahoma county to decree the cancellation of a deed to the N. E. ¼ of section 30, township 14, range 2 west, I. M., in Oklahoma county, on the ground that the deed was obtained from them by false and fraudulent representations. The defendants answered by general denial, and the cause was tried to the court without a jury, and after plaintiffs had concluded their evidence the defendants interposed a demurrer thereto upon the ground that the plaintiffs had failed to prove facts sufficient to constitute a cause of action, which was sustained and judgment rendered for defendants. To all of which plaintiffs excepted, and now bring this case here for review.

The principal question which the plaintiffs in error seek to have reviewed is that the evidence offered by the plaintiffs was sufficient to make a *prima facie* case, and that therefore the court erred in sustaining a demurrer thereto. But is the record sufficient to present that question? Let us see. In *Ragains v. Geiser Mfg. Co.*, 10 Okla. 544, 63 Pac. 687, the court said:

"After the plaintiff had introduced all of his evidence, the defendant filed his demurrer thereto, which was sustained by the court. Thereupon judgment was rendered for the defendant for costs, from which the plaintiff appealed. We have carefully read the entire record in this case, and find that a considerable portion of the evidence introduced upon the trial has been omitted from the case-made. It was the duty of the appellant, when he appealed

from the judgment of the trial court, if he desired to have this court review the evidence introduced upon the trial and determine as to whether or not the demurrer to the evidence was properly sustained, to bring up all the evidence introduced upon the trial, by case-made or bill of exception; and, inasmuch as he failed to do this, he is not in a position to say that the trial court was not authorized to render the judgment entered in this case. * * * This court has heretofore announced the rule that a case will not be reviewed upon the evidence unless all the evidence bearing upon the particular point sought to be reviewed is presented by the case-made or bill of exceptions. *Pappe v. Insurance Co.*, 8 Okla. 97, 56 Pac. 860, and cases therein cited."

See, also, *Pierce, Sheriff, v. Engelkemier*, 10 Okla. 308, 61 Pac. 1047.

Invoking this rule, defendants contend that "it is an undisputed fact that the pretended case-made affirmatively shows that it does not contain all the evidence introduced and considered by the trial court in the determination of said cause," and that "page 72 indicates rather strongly that one or more pages have been torn out"; but this could hardly be the case, for the reason that the last question and answer on page 71 of the case-made reads as follows: "Q. Did you talk to any other witness? A. No, sir, not that I know of, nothing to speak of; if there was any— (and the first line of page 72 reads)— thing said I just walked off"; showing that the objection is wholly unfounded, as the word "anything" is hyphenated, leaving "any" on page 71 and "thing" on page 72 of the record.

Their next contention is "that, on page 157 of said record, counsel for plaintiffs in error, in support of their amendment to their motion for a new trial, refer to the depositions of the following witnesses taken and filed in said court on behalf of defendants, to wit: Albert Slade, J. M. Pearson, Frank H. Morgan, E. B. Churchill, G. W. Clark, and Lum Wilson, and ask that said testimony, together with the photographs of the dwelling house attached thereto, be considered as a part of said motion for a new

trial, yet only two of these depositions appear to be contained in the record, and it is only fair to assume that the trial court in passing on the motion for a new trial complied with the request of said counsel and examined and considered all of them." Conceding the depositions of these witnesses, "together with the photographs of the dwelling house attached thereto," to have been filed in support of plaintiffs' motion for a new trial and considered on the hearing thereof, it is apparent that they were not read in evidence on the trial and do not fall within the reason of the rule stated, which is that, in order to induce this court to say that the trial court erred in sustaining a demurrer to the evidence, this court must have before it all the evidence upon which the trial court acted. As the trial court did not have these depositions before it at the time it sustained the demurrer to plaintiff's evidence, the same are immaterial to our consideration of the error alleged.

It is contended by defendants that "it is shown by the record that a certain plat was submitted to and used by some of the witnesses for the plaintiffs in error, whose depositions purport to be set out in the record, as the basis of some material testimony, and is designated as 'Exhibit A,' and that it does not appear as a part of the evidence in the case-made." The record discloses that such was used in the interrogation of the photographer, Mr. Fry, upon which he designated certain points from which he took photographs introduced in evidence. It was also used in the interrogation of the witness Crippin, as shown on pages 108 and 116 of his testimony, to illustrate the general lay of the land and the location of the ravines thereon, but nowhere in this record does it appear that such plat was introduced in evidence. We can see no error in this. To illustrate the facts desired to be set forth, it is a general rule that such a plat can be used without being formally introduced into evidence, where the same is merely ancillary to the witnesses' testimony. 4 Enc. of Evid. p. 636.

After a careful search of the briefs, this seems to be substan-

tially all of the defendants' contention on the point as to whether the record contains all the evidence.

From this contention, in effect, that the record does not contain enough, defendants' next contention is that it contains too much. In support of this they urge, among other things, that "counsel for plaintiffs in error is recalled for further examination, as shown at the bottom of page 163, and the last question propounded to him, as shown on said page, is as follows: 'Judge Brown, this photograph is one described in that deed?' Whereas, without any preliminary statement or explanation whatever, the following page (164) contains a purported copy of 'Homestead Certificate 10334' in favor of Zenas S. Whaley, which is followed on pages 165 to 171, inclusive, by various other instruments of conveyances, etc., and at the top of page 172 appears an answer of some witness to some question in the simple language of 'yes, sir.'" There is nothing in this to lead us to believe that any of Judge Brown's testimony was left out. The pages are correctly numbered, and nothing appears to break the continuity of the testimony. The insertion into the midst of Judge Brown's testimony of four pages of deeds introduced in evidence is a mere matter of taste as to how the case-made should be made up, concerning which we have nothing to say.

Special attention is next called to the fact "that on page 172 Frank W. Inglis, official court stenographer, certifies that the thirty-eight pages of the record immediately preceding his said certificate contains a full, true, and correct transcript of the testimony of witnesses; and on page 176½ of said pretended record E. Armstrong certifies that "page 13 of the case-made and pages 18 and 34, inclusive, and pages 73 to 76, inclusive, and from page 157 to page 153, inclusive, and page 172 to and including page 176 in the attached case-made is a full, true, and complete, and correct transcript of the notes of the oral testimony heard on said trial and taken down in shorthand by me, the exhibits shown in the case-made were not taken down by me in shorthand nor by

me transcribed." It is contended by counsel for defendants in error that it will thus be seen that "this leaves a large part of the purported testimony contained in said pretended case-made without any authentication whatever, and there is nothing in the record to show how these various portions of the testimony so called came to be inserted therein." "For instance (they say), we find that pages 14, 15, 16, and 17 contain purported conveyances of real estate, but there is nothing preceding or following them to indicate how they became a part of the record, as there is nothing to show that they were ever introduced into evidence, yet they appear as a part thereof." We presume that counsel were serious when they made this objection, and therefore we say that pages 1 to 12, inclusive, will be readily seen to contain the caption of the case-made and copies of the petition and amended petition, Exhibit A filed with the original petition, the statement in the case-made that summons duly issued, etc., and copies of the separate answers of the defendants in error, a statement that plaintiff was granted leave of court on payment of $25 to file amended petition, a caption showing that on the 15th of August, 1903, the case was called for trial, etc., and the plaintiffs to maintain their cause of action introduced certain evidence, and a copy of Exhibit A· to plaintiffs' complaint, introduced in evidence. Pages 14, 15, 16, and 17 are copies of deeds introduced in evidence. It occurs to us that, if these matters had no proper place in this case-made (and they surely have), they should have been objected to in plaintiffs' suggestions of amendment to case-made, which does not appear to have been done.

Again, it is objected that "there is nothing to show how that portion of the record from page 76½ to and including page 155, containing purported depositions, some apparently taken on behalf of plaintiffs in error, and others on behalf of defendants in error, came to be inserted therein, as there is no statement preceding them to the effect that these purported depositions were introduced on behalf of plaintiffs in error." On examination of these pages we find that the depositions referred to in the objection were

15 in number, 12 of which were taken by plaintiffs in error, and 3 purporting to be depositions taken on behalf of defendants in error, but introduced in evidence by plaintiffs in error, as was their right to do, if they saw fit. As said depositions appear by the case-made to have been introduced in evidence and read on the trial of the cause below, we think they are properly in the case-made. If they are not properly in the case-made, we repeat that it was the duty of the defendants in error to see that they were excluded on the settlement of the case-made in the court below.

The last objection, but one, to this case-made which we will undertake to pass upon is that "page 178 shows a demurrer to the evidence filed by the defendants in error in the court below on August 15, 1903; whereas page 179 shows the ruling of said court on said demurrer on the 15th day of August, A. D. 1904, and pages 180 and 185 show the filing of a motion for a new trial in said cause for the purpose of reviewing the said ruling of the trial court on said demurrer on August 18, 1903, and page 186 of said record, which is a statement by counsel for plaintiffs in error himself, shows the filing of an amendment to said motion for a new trial on the 31st day of August, 1904, whereas page 210 of said pretended record shows the ruling of said court on said motion for a new trial, including the amendments thereto, on the 10th day of November, A. D. 1903. How can this court, or any other court pass upon the merits of the controversy sought to be shown by such a record?" These were mere typographical errors which have since been corrected in the manner hereafter mentioned.

As soon after the submission of this cause as it was discovered by the court that said certificate was fatally defective, this court, pursuant to the act of March 15, 1905 (Sess. Laws, p. 322, c. 28), took steps to have the same corrected by the judge who tried the case below, and the same has been done, and the cause is now before us on a certificate of the case-made which complies with the law. At the same time there was regularly brought into the record certain photographs of improvements on the Missouri land,

introduced in evidence on the trial and inadvertently omitted from the case-made and later attempted to be made a part thereof by stipulation of counsel, and certain typographical errors corrected heretofore mentioned.

Having thus disposed of the various objections to the record, we are now ready to consider this case upon its merits, and the first question that confronts us is: Did the court err in sustaining the demurrer to the plaintiffs' evidence? In other words, was the evidence offered by plaintiffs sufficient to make a *prima facie* case? If so, the court erred in sustaining a demurrer thereto, otherwise not. In considering the evidence with a view to determining this question, let us consider for a moment what is admitted by defendants' demurrer in order to determine the probative force to be given to the evidence adduced by the plaintiffs.

It is a well-settled rule that "a demurrer to the evidence admits all the facts which the evidence tends to prove or of which there is any evidence, however slight, and all inferences which can be logically and reasonably drawn from the evidence. 6 Enc. of Pl. & Pr. p. 441; *K. C. R. Co. v. Cravens,* 43 Kan. 650, 23 Pac. 1044; *Mo. Pac. R. R. Co. v. Goodrich,* 38 Kan. 224, 16 Pac. 439; *Wolf v. Washer* 32 Kan. 533, 4 Pac. 1036; *Christie v. Barnes,* 33 Kan. 318, 6 Pac. 599.

In *Brown, Administrator, v. The Santa Fe Railway Co.,* 31 Kan. 16, 1 Pac. 610, the court says:

"But the decision of a case by the court upon a demurrer to the evidence is entirely unlike either the decision of a case by the jury upon the evidence or the decision of a case by the court upon a motion for a new trial; for where the court sustains a demurrer to the evidence the court must be able to say that admitting every fact that is proved which is favorable to the plaintiff, and admitting every fact that the jury may fairly and legally infer from the evidence favorable to the plaintiff, still the plaintiff has utterly failed to make out some one or more of the material facts of his case. * * *"

In *Myers vs. Presbyterian Church at Perry,* 11 Okla. 551,

69 Pac. 876, the court said: "A demurrer to the evidence not only admits the facts as proved to be true, but admits such facts as may be reasonably and rationally inferred from the facts proved. If there is evidence fairly tending to establish each material averment of the petition it is error to sustain a demurrer to plaintiff's evidence." Citing *Jaffray v. Wolf*, 1 Okla. 312, 33 Pac. 945; *Edmisson v. Drumm-Flato Commission Co.*, 13 Okla. 440, 73 Pac. 958; *Johnson v. Hays*, 6 Okla. 582, 55 Pac. 1068.

Let us turn to the evidence and see "if there is evidence fairly tending to establish each material averment of the petition"; if so, this case must be reversed, otherwise not. The proof shows that on the 2d day of August, 1901, the plaintiff in error, John D. Clark, was the owner of a tract of land described as follows: The N. E. ¼ of section 30, township 14, range 2 west, I. M., in Oklahoma county, Oklahoma Territory, and that the defendant in error Thomas O'Toole was the owner of the following tract of land: The N. E. ¼ of section 31 and the N. E. ¼ of the N. W. ¼ of section 32, all in township 28 N. of range 15 west, 5 P. M., in Wright county, Mo.; that on said day defendants in error, in order to induce plaintiffs in error to trade with them their said land in Oklahoma for their said land in Missouri, made, executed, and delivered to plaintiffs in error a certain instrument in writing, in words and figures as follows:

"Exhibit A.

"Oklahoma, Oklahoma, Aug. 2nd, 1901.
"I, Thos. O'Toole, described the improvements on my farm in Wright Co. Mo. and I guarantee the description to be as follows 120 acres of good land less than 10 acres not tilable a good well of water, a good spring and a 4 room house 38x18 feet one and one-half stories high in good order, a good barn for eight horses with shed, a good large smoke house and other out buildings a good fence all around all land cultivated, consisting of 60 acres, a good garden nicely picketed with picket fence, over 1,800 fruit trees, consisting of apples, peaches, pears, cherries, plumbs and apricots also some nice grape vines & strawberries, gooseberries, black-

berries, raspberries & dew berries & currents all fruit and all improvements in good order, also one tenement house 18x20 not good.

"This farm is one and one-half miles from Mansfield Wright Co. Mo. on the Ava state road and I guarantee to give possession of the buildings on the 20th day of Aug 1901 & I guarantee that the holder of this contract J. D. Clark will receive the rents of the said place for this year that would otherwise come to me the land being rented for one half of all crops of all kinds including fruit. Also one half of the hay there being about 12 acres of meadow on the place. My half of the hay to be stacked my half of the corn and oats to be put in cribs on the farm the land that is under cultivation can be cut with a mower or reaper or raked with a horse rake. The land not in cultivation will make good farming land when cleared but is now timber. All the above land is free and clear of all encumbrance.

"(Signed)                               THOS. O'TOOLE.
                                        MARY O'TOOLE.

"Personally appeared before me this the 2d day of August, 1901, Thos. O'Toole and Mary O'Toole who acknowledged the signing of the written contract for the purposes and consideration therein expressed and understood.

"GEORGE J. SHIELDS, Notary Public.
"My Com. expires Jan. 23rd, 1903.   [Seal.]"

Relying entirely on the statements contained in this written representation, plaintiffs in error, who had up to this time never seen the land therein described, on the same day made, executed, and delivered their warranty deed of the Oklahoma land, above described, to Mary A. O'Toole, one of the defendants in error, and on the same day defendants in error made, executed, and delivered to John D. Clark, one of the plaintiffs in error, a warranty deed to their said land in Missouri. Shortly thereafter plaintiffs in error, traveling overland, went to see the land traded for as aforesaid in Missouri, arriving there along in the early fall. The place they found did not lie "one and one-half miles from Mansfield, Wright county, Missouri, on the Ava state road," as represented, but lay one-fourth of a mile from the Ava state road and about two and one-half miles from Mansfield, Wright county, Mo., and

was originally patented by one Zenas S. Whaley and was known as the "Whaley" land. One of the houses on the place was occupied by a man by the name of Riley, but there was no land in cultivation on the place that year, and no fruit or hay, and hence that part of the written representation to the effect that plaintiffs in error were to "receive the rents of said place for this year that would otherwise come to me, the land being rented for one-half of all crops, including fruit, also one-half of the hay, there being twelve acres in meadow on the place," proved to be of no value. There was some kind of a garden picket fence, but the fences surrounding the tract were not sufficient to exclude stock running at large. The land consisted of three 40's, running east and west. There was not more than 50 or 60 acres of tillable land in the tract; perhaps half of it could have been made so, but the statement in the representation that "less than ten acres not tillable" was not true. Running through this land were three great ravines of an average depth of perhaps 60 to 100 feet, the sides of which were covered with rock, boulders, and scrubby timber, perhaps 50 feet wide on an average at the bottom where the land was somewhat level. The sides were so precipitous that it would be almost impossible to drive a wagon up them. Standing on the top of one ridge and looking across the ravine to the other ridge, one would see over the tree tops. The timber consisted of oak and hickory, but was not large enough to saw, except a few scattering trees now and then. There was some 10 or 15 acres of good land in the tract, but most of it was exceedingly poor, and the soil was of a "red clay nature" and gravelly, and the tract was estimated to be worth from $100 to $250. Instead of a good well of water, there was a bored well about 100 feet deep with no water in it; instead of a good spring, they found a hole in the ground walled with rock and apparently supplied with water from the surface and with little water in it. Instead of finding a four-room house 38x18 feet, 1½ stories high, in good condition, they found a one-room log house about 12x14 feet with a loft in it reached by a ladder. The

floors of the room and of the loft were composed of heavy rough boards laid loose, with two doors and two windows downstairs and holes for windows cut in each gable. It was set upon a rock foundation and had a rock chimney. Instead of a good barn for eight horses with a shed, they found no barn at all, but a dilapidated log stable covered with boards, with a shed, with room for from two to four horses. There were poles drawn across the doors; the east side of it was 5 feet 3 inches high, and the length something over 20 feet; it was 11 feet 10 inches from the comb to the ground, and 18 feet wide. There was a chicken house made of small logs 10x 14 feet, and another building of logs about 14x16 feet and 8 feet high, with a hole in it for a window. This latter building might have been the smoke house or the tenement house, which is described in the representations made to plaintiffs in error as "not good." Instead of 1,800 fruit trees, there were probably 600 or 800 in a neglected condition; some had their tops broken off, and all were very small, not more than two inches in diameter; there were five bearing trees; they were badly missing in spots; they were planted on the south hillside, and fruit trees so planted "burn out" and do not bear well in that country. Most of these fruit trees were apple trees, with perhaps a few cherry trees, peach trees, and plum trees scattered around, but no peach trees or apricot trees so far as this testimony discloses. Instead of some "nice grapevines, strawberries, gooseberries, blackberries, raspberries, dewberries, and currants, all fruit and improvements in good order," there were a few grapevines and a few gooseberry bushes down in the hollow and some blackberries. That was all. The grapevines were on the ground. The stable and shed above described, was estimated to be worth about $7, the "house $75.00, chimney and all," one of the other log buildings about $30, another log building worth about $6, and a small outhouse, worth perhaps $5. This seems to have been the total value of all the buildings on the place. Instead of the representation that the "land not in cultivation will make good farming land when cleared" being true, about one-half of the entire tract could not have been cultivated if cleared.

After remaining on the place a few days, plaintiffs in error returned to Oklahoma, having expended about $100 or more on the trip, and immediately went to see defendants in error for the purpose of rescinding the contract and recovering their land. They complained that the same was not as represented, and on this point plaintiff in error Elizabeth Clark testified:

"When I told him I was not satisfied with the place, he got mad and told me to get off the place, and followed me out into the road, and if I had not got out in the road I expect he would have hit me with something he had. He would not talk about the place at all."

The plainitff in error, John D. Clark, testifies:

"Q. You offered to trade back before you commenced this suit? A. Yes, sir. Q. Who drew the deed for you? A. Mr. McGinnis. Q. Now, just tell us what you said and what they said. A. I told him I would make his deed for him, and he said something about the signature; that it would have to be changed; it was not right some way; and I said we would leave it to a lawyer, and if the signature was wrong we would have it changed. * * * Q. Was Mrs. O'Toole present at that time? A. Yes, sir; she was present part of the time, I think. Q. What did she say? A. Nothing."

In the light of all the evidence, we are clearly of the opinion that plaintiffs in error were induced, to their injury, to part with their title to their land in Oklahoma on the false and fraudulent representations of defendants in error, herein set forth, and upon which they relied believing the same to be true, and that the evidence adduced on the trial in the court below was sufficient to constitute a *prima facie* case for relief. We think this case is one in which a trust and confidence on the part of plaintiffs in error was necessarily implied to be reposed in defendants in error which imposed upon them the duty to tell the truth to plaintiffs in error concerning the land in Missouri at the time this trade was made, which they did not do. 2 Pom. Eq. Jur. § 902.

Defendants in error contend that before plaintiffs in error were entitled to bring this suit they should have made and tendered to

the defendant in error Thomas O'Toole a deed to the Missouri land and asked for a rescission of the contract. In support of this they cite section 827 of Wilson's Revised and Annotated Statutes of Oklahoma of 1903, article 5, "Extinction of Contracts," which reads as follows:

"Rescission when not effected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First: He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability, and is aware of his right to rescind; and,

"Second: He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same, upon condition that such party will do likewise, unless the latter is unable, or positively refuses to do so."

From the testimony quoted above a request for a prompt rescission of this contract can be fairly inferred. That part of the statute which refers to a restoration of property received, or "offer to restore the same," is and has been long recognized as the established equitable doctrine on the subject of rescission and cancellation. Plaintiffs in error set forth in their petition that they "are ready and willing to execute and deliver a deed to the 120 acres of land in Missouri, as aforesaid, to the defendants," and contend that the same is sufficient to bring them within the terms of the statute. In this we think they are correct. Speaking of this kind of an action, the court in *Malloy v. Berkin*, 11 Mont. 138, 27 Pac. 442, says:

"The very object and purpose of the action is to compel an undoing of what has been done; to compel a mutual restoration of each party to the position he occupied before the fraudulent transaction was consummated. Neither the relief nor the right to relief is predicated upon the tender back of what was paid in procuring the contract. In this case the relief, if granted, proceeds upon the ground that some circumstances or conditions exist in relation to the parties which in law amounts to constructive fraud, or that

actual fraud has been practiced in procuring the execution of the conveyance or contract. Willard's Equity Jurisprudence, 302; 1 Storey's Equity Jurisprudence, § 694 *et seq.;* 2 Pomeroy's Equity Jurisprudence, §§ 922-928. As a matter of course, in granting relief the court requires equity at the hands of the complaining party as well as from the party guilty of fraud; that is, the restoration of everything of value received in the transaction. The precise point has been under consideration in numerous well-considered cases of this nature, and it has been held that a court of equity will proceed with the action for cancellation without requiring, as a condition precedent to commencing the action, that the complaining party shall have tendered back what he had received; that an offer in his complaint to restore the same is sufficient; and, if a case is made out which moves the court to grant relief, it carries into effect the maxim that 'he who seeks equity will do equity.' "

See 1 Storey's Equity Jurisprudence, § 693; *Gould v. Cayuga Co. Nat. Bank,* 86 N. Y. 75; Id., 99 N. Y. 337, 2 N. E. 16; *Allerton v. Allerton,* 50 N. Y. 670; *Vail v. Reynolds,* 118 N. Y. 302, 23 N. E. 301; *Shuee v. Shuee,* 100 Ind. 477; *Hopkins v. Snedaker,* 71 Ill. 449; *Whelan v. Reilly,* 61 Mo. 565; *Thomas v. Beals,* 154 Mass. 51, 27 N. E. 1004.

That an offer to restore is sufficient when made in plaintiff's petition, is shown by the weight of authority. 24 Enc. of Law (2d Ed.) p. 621, reads as follows: "Whether the complaint in a suit for rescission must, as a condition precedent to relief, have offered or tendered restitution to defendant prior to the bringing of the suit, is a matter upon which the authorities are conflicting. The rule of the better considered cases is that it is sufficient that the plaintiff makes his offer to restore or to do equity in his bill or complaint, and shows therein that he has substantially preserved the *status quo* on his part so as to be able to fulfill his offer"— citing cases. See, also, *Seiker v. Pracht,* 39 Kan. 521, 18 Pac. 718; *Thayer v. Knote,* 59 Kan. 181, 52 Pac. 433. The proof shows conclusively that the plaintiffs, aside from making a proper offer to restore in their petition, had preserved the *status quo,* in that they

testified that they had in no way incumbered or dealt with the land, and on the next day followed up their offer to restore by tendering a warranty deed purporting to reconvey to defendants in error the Missouri land, which was refused.

For the reasons mentioned, we are further of the opinion that the court erred in sustaining the demurrer to the evidence offered by plaintiffs in error, and in overruling their motion for a new trial, and that this case should be reversed and remanded for a new trial; and it is so ordered.

Dunn and Kane, JJ., concur; Williams, C. J., and Hayes, J., dissent.