PRUITT v. OKLAHOMA STEAM BAKING CO. et al.

No. 2699. Opinion Filed August 6, 1913.

Rehearing Denied October 21, 1913.

(135 Pac. 730.)

1. **CORPORATIONS—Issuance of Stock—Limitation.** A corporation whose capital is limited by its charter, either in amount or number of shares, cannot issue valid certificates in excess of the limit thus prescribed. Section 1238, Rev. Laws 1910.

2. **SAME—Overissue of Stock—Validity.** Certificates of stock issued in violation of the statute are wholly valueless and void, without regard to the intent of the parties to the overissue.

3. **SAME—Contracts—Ratification.** Ratification in its correct sense is impossible equally of an illegal and a void contract; hence the acceptance of advancements on dividends on spurious stock cannot be considered as a ratification of a contract for the purchase of such stock, since the contract is illegal and void in its inception and incapable of ratification.

4. **SAME—Validity.** A contract of a corporation to issue stock in excess of the amount authorized by its charter is not voidable only but wholly void; it cannot be ratified by either party; no performance on either side can give the unlawful contract any validity or be the foundation of any right of action based upon it.

Pruitt v. Oklahoma Steam Baking Co. et al.

5.    CANCELLATION OF INSTRUMENTS — Complaint — "Offer to Restore"—Sufficiency.  In an action for rescission and cancellation of a deed obtained by fraud and without consideration, an allegation in the petition that the plaintiff be charged with so-called dividends received by him and credited with the value of the reasonable use and occupation of the lands conveyed, where the deed was executed in pursuance of a void contract, is a sufficient "offer to restore" within the meaning of section 986, Rev. Laws 1910.

(Syllabus by Sharp, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by C. C. Pruitt against the Oklahoma Steam Baking Company and others.  Judgment for defendants, and plaintiff brings error.  Reversed and remanded.

*Wiley Jones,* for plaintiff in error.

*Everest, Smith & Campbell,* for defendants in error.

Opinion by SHARP, C.  In the month of June, 1909, the plaintiff in error, hereinafter designated as plaintiff, exchanged with the defendant in error Oklahoma Steam Baking Company, a domestic corporation, an undivided one-half interest in two certain lots in Oklahoma City for 100 shares of the capital stock of the defendant Oklahoma Steam Baking Company.  The shares were valued at $25 each.  At the time of the exchange and of the delivery of deed and certificates, the capital stock of the baking company was $10,000.  The full amount of the capital stock had been paid in, and for which certificates of stock had issued. Upon the entering into of the contract, plaintiff had been assured by his brother, who was president of the baking company, that the capital stock of the latter company had been increased from $10,000 to $15,000.  On January 27, 1910, plaintiff's said brother died, whereupon plaintiff for the first time discovered that the capital stock of the corporation had not been increased, as had theretofore been represented.  Nor was the capital stock increased until October 6th following.  Various sums of money had been paid plaintiff by the corporation as advancements on dividends.  Three of these payments, amounting to $20 each,

were paid after plaintiff had discovered that the capital of the corporation had not been increased. Suit to rescind the contract and for a cancellation of the deed was brought April 18, 1910, in which plaintiff asked that he be charged with the amount of the so-called dividends and be credited with the value of the reasonable use and occupation of his interest in the two lots, and that an accounting be had. The case was submitted to a jury to find specially on certain interrogatories propounded by the court. The answers to these interrogatories, save one, were favorable to the plaintiff's contention. The remaining interrogatory, to the submission of which objection was made, propounded to the jury the question whether or not plaintiff, after discovering that the capital stock had not been increased, ratified the former agreement by the acceptance of the advanced payments as dividends on his stock. The interrogatory, in the form submitted, was objectionable and should not have been given, although the court could properly have submitted to the jury the question whether or not plaintiff had accepted payments and whether such payments were accepted as dividends. The legal effect, however, of the acceptance of the advanced payments, and whether by it plaintiff ratified his former agreement or was estopped to assert his right to rescission, was properly a question of law for the court.

It is urged by defendants in error that the acceptance of the several payments of money made plaintiff by the baking company constituted on his part a ratification of the original contract, after discovery of the fraud; hence the action cannot be maintained. That a fraud was practiced on the plaintiff, whether intentional or otherwise, is clear. For his interest in the real estate conveyed he received worthless certificates of stock, issued in plain violation of law. Section 1285, Comp. Laws 1909 (section 1238, Rev. Laws 1910), provides:

"Excess Issue Void.—A corporation whose capital is limited by its charter, either in amount or in number of shares, cannot issue valid certificates in excess of the limit thus prescribed."

The act, therefore, of the baking company in issuing to plaintiff the 100 shares of its stock, in excess of the amount

limited and prescribed by its articles of incorporation, was a nullity. It is said in Cook on Stock and Stockholders, sec. 292, in stating the law on this subject:

"By overissued stock is to be understood stock issued in excess of the amount limited and prescribed by the act of incorporation. Certificates of stock issued in excess of the certificates that represent the full authorized capital stock of the corporation represent overissued stock. Such stock is spurious and wholly void. This is the settled law, and it prevails equally whether the overissue is the result of accident or mistake, or want of knowledge of the law, or is due to fraud and intentional wrongdoing. The *animus* or intent of the parties to the overissue is not material. Overissued stock, no matter how overissued, represents nothing and is wholly and entirely valueless and void. So rigid and well established is this rule that not even a *bona fide* holder of such stock can give to it any validity or vitality."

Both by statute and at common law the issuance of the stock, delivered to plaintiff in exchange for his land, as we have seen, was void and not merely voidable at plaintiff's election. The corporation knowingly did that which it was without authority of law to do.

It is said that ratification in its correct sense is impossible equally of an illegal and a void contract. *Moog v. Hannon's Adm'r*, 93 Ala. 503, *sub nom., Moog v. Espalla*, 9 South. 596; *Lindt v. Uihlein*, 109 Iowa, 591, 79 N. W. 73; *Id.*, 80 N. W. 658; *Bick v. Seal*, 45 Mo. App. 475; *McCormick Harvesting Co. v. Miller*, 54 Neb. 644, 74 N. W. 1061; *Rue v. Missouri Pac. Ry. Co.*, 74 Tex. 474, 8 S. W. 533, 15 Am. St. Rep. 852; Page on Contracts, sec. 511.

When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence, or to its action, because such requisites might in fact have been complied with. But when a contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be es-

topped, by assenting to it or by acting upon it, to say that it was prohibited by those laws. Neither can the contract be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity or be the foundation of any right of action based upon it. *Central Transportation Co. v. Pullman Palace Car Co.,* 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55.

Had the baking company afterwards increased its capital stock and then paid to plaintiff dividends or advancements on dividends, and he, with knowledge of the facts, had accepted the same, a very different question would be presented. In the instant case, however, the capital stock was not increased until almost six months after the suit for a rescission was filed. While it may be true that pending litigation rendered unwise earlier action in this regard on its part, it constitutes no defense to plaintiff's suit. Where the issue of shares is illegal for the want of power of the company to issue them, where the shares cannot legally exist, the person taking them cannot, by estoppel or otherwise, become a member in respect to them. Hence, being open to repudiation by the corporation itself or by dissenting shareholders, the person taking them has a right to rescind the contract under which the stock was taken and be restored to his original position. 10 Cyc. 375. The money paid plaintiff could not in fact have been paid him as dividends, as he was not a stockholder. No consideration whatever passed to him, and he was not bound to accept stock issued six months after the institution of his suit. *Handy v. St. Paul Globe Pub. Co.,* 41 Minn. 188, 42 N. W. 872, 4 L. R. A. 466, 16 Am. St. Rep. 695. It is fairly inferable that the trade was based upon the value of the stock at the time, and plaintiff was under no legal or moral obligation to accept stock issued sixteen months thereafter, and at a time when its value might have greatly depreciated, if not become absolutely worthless. To so hold would be to substitute a new for the old contract.

A very similar question was before the Supreme Court of Massachusetts in *American Tube Works v. Boston Machine Co.,*

139 Mass. 5, 29 N. E. 63, involving the unauthorized issue of a form of stock known as special stock. The court, speaking through Allen, C. J., said:

"The issue of special stock being invalid and being open to repudiation by the corporation itself or by dissenting stockholders, the plaintiff had an election to rescind the contract under which the special stock was taken and to be restored to its original position. *Allen v. Herrick,* 15 Gray, 274, 284. It was not bound by any estoppel. In all the cases which have come under our observation where one has been held to be deemed a stockholder by estoppel, there has been a legal creation of the capital stock. Such was the case in *Turnbull v. Payson,* 95 U. S. 418 [24 L. Ed. 437]. But where the issue of the shares is illegal, where no sufficient steps have been taken to authorize the creation of the capital stock, where a person has acted and been treated as a stockholder in respect of shares which the company had no power to issue, and where the shares cannot legally exist, the person taking them cannot, by estoppel or otherwise, become a member in respect to them. Lindl. Partn. 134. Moreover, in the case before us, the defendant corporation has no equity to insist that the plaintiff corporation should be treated as a stockholder. It failed to issue the number of shares contemplated by its vote. It has been in no respect misled by any act of the plaintiff. It has not changed its position for the worse. It has had the plaintiff's money and has simply paid what is equivalent to interest upon it. No rights of third parties have intervened. The consideration upon which the plaintiff parted with its money has failed. The defendant corporation issued special stock, which was at the time supposed by both parties to be valid but which was invalid. Under such circumstances, an action lies to recover back the money. *Dill v. Wareham,* 7 Metc. (Mass.) 438; *Earle v. Bickford,* 6 Allen, 549 [83 Am. Dec. 651]. The election by the plaintiff to rescind the contract was exercised within a reasonable time. Formal notice was given on April 28, 1883, or about 27 months after the first issue of special stock to the plaintiff. This special stock might have been made good, so that the plaintiff would be content or be bound to keep it. The defendant twice endeavored without success to effect this result. It has suffered nothing from the delay. The notice of rescission was sufficient in form, and the offer to return all considerations received was also sufficient. Indeed, since the money received by the plaintiff as interest or dividends was not equal to the amount of money which the plaintiff was and now is entitled to

receive, no offer to return the same was necessary. *Montgomery v. Pickering,* 116 Mass. 227, 231."

There, it will be noted, notice of rescission was not given until 27 months after the first issue of the special stock to the plaintiff, while here the suit was brought within ten months from the issue of the spurious stock and about ten weeks after the first discovery of the fraud.

By section 984, Rev. Laws 1910, it is provided that a party to a contract may rescind the same in the following, among other, cases:

"First. If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party. Second. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part. Third. If such consideration becomes entirely void from any cause."

Section 986, Rev. Laws 1910, provides how and when a rescission may be accomplished.

Plaintiff has offered to account to the defendant for the payments made him and is not, under the facts of this case, estopped from asserting his rights to a rescission. For almost a year he had been kept out of the use and enjoyment of his property; and, even were it true that the original contract was voidable and not void, it is doubtful whether the acceptance on account of the small sums of money paid him after discovery of the wrong would be such a ratification as would prevent a rescission. *McClelland v. McClelland,* 176 Ill. 83, 51 N. E. 559; *Tarkington v. Purvis,* 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607; *Morse v. Royal,* 12 Ves. Jr. 355, 373. The plaintiff has sufficiently brought himself within the requirements of our statute entitling him to a rescission. *Clark et al. v. O'Toole et al.,* 20 Okla. 319, 94 Pac. 547; *Gidney v. Chappell,* 26 Okla. 737, 110 Pac. 1100; *Stevens v. Elliott et al.,* 30 Okla. 41, 118 Pac. 407; *Prescott et al. v. Brown,* 30 Okla. 428, 120 Pac. 991. On

his part he has offered to restore the *status quo;* and while on account of the mortgage given to the Oklahoma State Bank the judgment of rescission must be without prejudice to its rights, it being found by the trial court to be an innocent purchaser, and no appeal from that judgment having been prosecuted, it is within the power of the trial court, upon a remand of the case, to make such order in the premises as will protect the plaintiff's rights.

The cause should be reversed and remanded for further proceedings not inconsistent with this opinion, without prejudice to the rights of the Oklahoma State Bank, and an accounting should be directed in respect to the sums paid plaintiff and other proper charges between the parties.

By the Court: It is so ordered.